Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEA VIZCARRA, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>MICHAELS STORES, INC.,<br><br>    *Defendant*. | Case No. 5:23-cv-468-BLF<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**Table of Contents**

I.    Introduction. ................................................................................................. 1

II.   Parties ........................................................................................................... 4

III.  Jurisdiction and Venue. ................................................................................ 5

IV.  Facts. ............................................................................................................ 5

      A.    Defendant's fake prices and fake discounts. ................................... 5

      B.    Evidence confirming that Defendant's purported regular prices and purported discounts are fake. ................................................... 17

      C.    Defendant's purported "regular" prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discount. ........................................ 20

      D.    Defendant's advertisements are unfair, deceptive, and unlawful. .............................. 20

      E.    Defendant's advertisements harm consumers. ................................ 21

      F.    Defendant knows that its conduct is deceptive and illegal. ........................................ 23

      G.    Plaintiff was misled by Defendant's misrepresentations. ........................................ 23

      F.    Defendant breached its contract. ................................................... 27

      G.    No adequate remedy at law. ........................................................... 28

IV.  Class action allegations. ............................................................................. 28

V.   Claims. ....................................................................................................... 30

VI.  Relief. ......................................................................................................... 40

# I.     Introduction.

1.     Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.     While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.     Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.     Moreover, Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.  So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5.     In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

6.     Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.  They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case.  16 C.F.R. § 233.1.

7.      So, as numerous courts have found, fake sales violate these laws.  They also violate California's general prohibition on unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

8.      Defendant Michaels Stores ("Defendant" or "Michaels") sells and markets arts, crafts, and other decor products online and in-store ("Michaels Products" or "Products").  The Products are sold online through Defendant's website, www.michaels.com, and in Defendant's stores.

9.      Defendant has a well-documented history of engaging in deceptive, fake-discount advertising.  In 2011, Defendant "agreed to enter a $1.8 million settlement for engaging in deceptive advertising practices by misleading consumers into thinking they were receiving steep discounts over a two-year period."[1]  As New York's Attorney General stated at the time, "[f]or years, Michaels duped consumers into thinking they were receiving huge discounts, when in fact, they were simply paying the regular store price … Through deceptive advertising practices, this company violated the law and took advantage of hardworking consumers trying to save money."[2]

10.     Despite already being caught (and fined) for deceiving consumers through deceptive price advertising, Defendant is at it again.  On its website, Defendant lists purported "regular" prices and advertises purported "Limited Time" discounts from those "regular" prices.  These include "LIMITED TIME!" site-wide discounts available by using a discount code, such as "20% off regular price purchases with code 22MADEBYYOU."  These also include supposed "Sales" on particular categories of items which are advertised as having a lower discount price as compared to a higher, regular price shown in grey and/or strikethrough font.  Examples are shown on the following page:

---

[1] https://ag.ny.gov/press-release/2011/ag-schneiderman-secures-18-million-michaels-stores-misleading-consumers

[2] *Id.*



11.     Similarly, in stores, Defendant lists purported "regular" prices.  It then advertises and distributes purportedly time-limited coupons (both physical and electronic) that give customers a store-wide discount on all regular price purchases.  For example:

12.     Far from being time-limited, however, Defendant's site-wide and store-wide discounts are *always* available (and are always at least 20% off the purported "regular" prices). As a result, everything about Defendant's price and purported discount advertising is false. The "regular" prices Defendant advertises are not actually Defendant's "regular" prices, because Defendant's Products are *always* available for at least 20% less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts "LIMITED TIME!"—quite the opposite, they are always available.

13.     As described in greater detail below, Ms. Vizcarra bought items from Defendant on multiple occasions, from its website and also in-store. Both times, a purported site-wide and store-wide sale was going on, and so Defendant represented that the Products Ms. Vizcarra purchased were being offered at a steep discount from their purported "regular" prices that Defendant advertised. And based on Defendant's representations, Ms. Vizcarra believed that she was purchasing Products whose regular price and market value was the purported "regular" price that Defendant advertised, that she was receiving a substantial discount, and that the opportunity to get that discount was time-limited. These reasonable beliefs are what caused Ms. Vizcarra to buy from Defendant when she did.

14.     In truth, however, the representations Ms. Vizcarra relied on were not true. The purported "regular" prices were not the true regular prices, the purported "discounts" were not the true discounts, and the discounts were ongoing—not time limited. Had Defendant been truthful, Ms. Vizcarra and other consumers like her would not have purchased the Products, or would have paid less for them.

15.     Plaintiff brings this case for herself and the other customers who purchased Michaels Products.

## II.     Parties

16.     Plaintiff Nea Vizcarra is domiciled in Salinas, California.

17.     The proposed class includes citizens of every state.

18.     Defendant Michaels Stores, Inc. is a Delaware corporation with its principal place of business at 3939 W. John Carpenter Freeway, Irving, Texas 75063.

1    **III.    Jurisdiction and Venue.**

2        19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount

3    in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in

4    which one or more members of the proposed class are citizens of a state different from Defendant.

5        20.    The Court has personal jurisdiction over Defendant because Defendant sold Michaels

6    Products to consumers in California, including to Plaintiff.

7        21.    Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because

8    Defendant would be subject to personal jurisdiction in this District if this District were a separate

9    state, given that Defendant sold Michaels Products to consumers in this District, including Plaintiff.

10   Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct

11   giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

12       22.    <u>Divisional Assignment</u>.  This case should be assigned to the San Jose division.  *See*

13   L.R. 3-2(c).  A substantial part of the events giving rise to the claims occurred in Salinas, California.

14   **IV.    Facts.**

15       **A.    Defendant's fake prices and fake discounts.**

16       23.    Defendant Michaels Stores manufactures, distributes, markets, and sells arts and crafts

17   and other decor products.  Defendant sells its Products directly to consumers through its website,

18   www.michaels.com.  Defendant also sells its Products directly to consumers through its brick-and-

19   mortar "Michaels" stores nationwide.

20       24.    On its website and in its brick-and-mortar stores, Defendant creates the false

21   impression that its Products' "regular" prices are higher than they truly are.

22       25.    At any given time, on its website, Defendant advertises steep site-wide and store-wide

23   discounts on all "regular price" items using a coupon code.  These discounts always offer at least

24   20% off the "regular" prices Defendant advertises.  Even though in truth these discounts run in

25   perpetuity, Defendant prominently claims they are "LIMITED TIME!"  And it advertises these

26   discounts extensively: on a red, attention-grabbing banner on its homepage; on the search page

27   (again, in attention-grabbing red font) next to the price of each "regular" priced item; on the product

28

1  page for each "regular" price item; on the "shopping cart" page; and during checkout. Example

2  screenshots are provided below:



*Captured on January 9, 2021*

*Captured on May 3, 2021*

*Captured on October 31, 2021*



*Captured on February 2, 2022*

*Captured on June 13, 2022*

*Captured on December 1, 2022*

*Captured on January 31, 2023*



*Captured on April 7, 2022*



*Captured on January 9, 2023*



*Captured on October 18, 2022*



*Captured on October 18, 2022*



*Captured on April 21, 2023*

26.     In addition, at any given time, Defendant represents that many categories of Products are "on sale" at an even steeper discount than the one that applies site-wide (for example: "60% OFF ALL Thanksgiving, Baking & Craft Supplies").  For these Products, Defendant lists a "regular" or "Reg." price in grey and/or strikethrough font, and a much more prominent "Sale" price in red font. Reasonable consumers interpret these statements to mean that the "Reg." price is the regular price at which the Product was formerly (and is usually) sold, and that this represents the market value of the Product; and that the "Sale" price is a lower, discounted price only available for a limited time. Like Defendant's representations about the site-wide discount for regular price items, Defendant's representations that its sale items are discounted persist throughout the homepage, product pages, shopping cart, and checkout.  Example screenshots are provided below:



*Captured on March 16, 2021*



*Captured on June 1, 2022*



*Captured on November 7, 2022*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Captured on April 21, 2023*

1
2
3
4
5
6
7
8
9
10
11
12
13



14          *Captured on April 21, 2023*

15          27.     Defendant carries out the same deceptive pricing scheme in its brick-and-mortar stores

16   too.  Defendant offers and advertises online and physical coupons for a certain "% off All Regular

17   Price Purchases" made in-store, which are only "Valid through" a particular date in the near future.

18   And Defendant advertises that certain Products are on "Sale" at an even steeper discount off

19   purportedly much higher "Reg." prices.  Example screenshots and photos are provided on the

20   following pages:

21
22
23
24
25
26
27
28













1
2
3
4
5
6
7
8
9

 

10    28.    Using these tactics, Defendant leads reasonable consumers to believe that they will get

11  a discount on the Products they are purchasing if they purchase during the "limited time" promotion.

12  In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product

13  worth X at a discounted, lower price Y.  This creates a sense of urgency: buy now, and you will

14  receive something worth more than you pay for it; wait, and you will pay more for the same thing

15  later.

16    29.    Based on Defendant's advertisements, reasonable consumers reasonably believe that

17  the "regular" prices Defendant advertises are Defendant's former prices (that is, the price at which

18  the goods were actually offered for sale before the limited-time coupon-based offer went into effect).

19  In other words, reasonable consumers reasonably believe that the "regular" prices Defendant

20  advertises represent the amount that consumers formerly had to pay for Defendant's goods, before

21  the limited-time sale began.  Said differently, reasonable consumers reasonably believe that, prior to

22  the supposedly time-limited coupon-based sale, consumers had to pay the "regular" price to get the

23  item and did not have the opportunity to get a discount from that "regular" price, through a coupon or

24  otherwise.

25    30.    Reasonable consumers also reasonably believe that the "regular" prices Defendant

26  advertises represent the true market value of the Products, and are the prevailing prices for those

27  Products; and that they are receiving reductions from those "regular" prices in the amounts

28  advertised.  In truth, however, Defendant *always* offers site-wide and store-wide coupon codes and

coupons entitling that afford discounts of at least 20% off the purportedly "regular" prices it advertises.  As a result, everything about Defendant's price and purported discount advertising is false.  The "regular" prices Defendant advertises are not actually Defendant's "regular" or former prices, or the prevailing prices for the Products Defendant sells, and do not represent the true market value for the Products, because Defendant's Products are *always* available for at least 20% less than that, and customers did not have to formerly pay that amount to get those items.  The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.  Nor are the purported discounts "LIMITED TIME!"—quite the opposite, they are always available.

> **B.**     **Evidence confirming that Defendant's purported regular prices and purported discounts are fake.**

31.     To confirm that Defendant's purported "regular" prices are fake and that Defendant always offers site-wide and store-wide discounts of at least 20% off those purportedly "regular" prices, Plaintiff's counsel performed an extensive investigation of Defendant's pricing practices using the Internet Archive's Wayback Machine (available at www.archive.org).  The Wayback Machine captures snapshots of websites such as Defendant's website at periodic intervals.

32.     Due to Defendant's popularity, Archive.org maintains thousands of archived versions of Defendant's homepage (where the supposed site-wide discounts are advertised) throughout the relevant timeframe.  For each month from January 2021 to the present, Plaintiff's counsel randomly selected and accessed a snapshot of Defendant's homepage to determine whether and, if so, to what extent, site-wide price reductions were advertised.  The results are summarized below.  As the results show, in every single one of the snapshots that Plaintiff's counsel accessed, a site-wide discount of at least 20% was advertised.  In addition, on each snapshot, Defendant advertised additional "Sales" beyond the site-wide discount.  This confirms that site-wide discounts of at least 20% were always available throughout the relevant timeframe.

| Snapshot date | Advertised Discount | Discount Code |
|---|---|---|
| 1/9/2021 | "20% off all regular price purchases" | 20MADEBYYOU |
| 2/28/2021 | "20% off all regular price purchases" | 20MADEBYYOU |

| | | |
|---|---|---|
| 3/16/2021 | "20% off all regular price purchases" | 20MADEBYYOU |
| 4/10/2021 | "20% off all regular price purchases" | 20MADEBYYOU |
| 5/3/2021 | "20% off all regular price purchases" | 20MADEBYYOU |
| 6/29/2021 | "20% off all regular price purchases" | 20MADEBYYOU |
| 7/13/2021 | "20% off all regular price purchases" | 20MADEBYYOU |
| 8/7/2021 | "20% off all regular price purchases" | 20MADEBYYOU |
| 9/20/2021 | "20% off regular price purchases" | 20MADEBYYOU |
| 10/31/2021 | "20% off regular price purchases" | 20MADEBYYOU |
| 11/16/2021 | "20% off regular price purchases" | 20MADEBYYOU |
| 12/29/2021 | "20% off regular price purchases" | 20MADEBYYOU |
| 1/11/2022 | "20% off regular price purchases" | 20MADEBYYOU |
| 2/2/2022 | "20% off regular price purchases" | 22MADEBYYOU |
| 3/17/2022 | "20% off regular price purchases" | 22MADEBYYOU |
| 4/7/2022 | "20% off regular price purchases" | 22MADEBYYOU |
| 5/24/2022 | "20% off regular price purchases" | 22MADEBYYOU |
| 6/13/2022 | "20% off regular price purchases" | 22MADEBYYOU |
| 7/31/2022 | "20% off regular price purchases" | 22MADEBYYOU |
| 8/19/2022 | "20% off regular price purchases" | 22MADEBYYOU |
| 9/1/2022 | "20% off regular price purchases" | 22MADEBYYOU |
| 10/25/2022 | "20% off regular price purchases" | 22MADEBYYOU |
| 11/14/2022 | "20% off regular price purchases" | 22MADEBYYOU |
| 12/1/2022 | "30% off all regular price purchases" | 30ENTIRE221201 |
| 1/31/2023 | "20% off all regular price purchases" | 23MIKDAILYUS |
| 2/18/2023 | "20% off all regular price purchases" | DAILY23US |

Franzini Decl., ¶¶ 2-3.

33.     Archive.org also maintains hundreds of archived versions of the page www.michaels.com/coupons throughout the relevant timeframe (though fewer than of the

homepage).  This page includes a picture of any in-store coupons available for use at any given time.

Because each coupon includes a "valid thru" date on its face, using this information, Plaintiff's

counsel was able to reconstruct a complete timeline of all of the coupons available for use within the

year preceding the filing of the Complaint, as well as the dates that they could be used.  The results

are summarized below.  As the results show, Defendant *always* offers coupons giving customers at

least 20% off store-wide for at least a year leading up to the filing of the Complaint.  This confirms

that Defendant's true regular prices were at least 20% were less than advertised throughout that

timeframe.  Moreover, because each coupon on its face also includes a corresponding "online promo

code," this evidence also further confirms that online site-wide discounts were also available

throughout that timeframe as well.

| Snapshot date | Advertised Discount | Discount Code | Valid through |
|---|---|---|---|
| 2/1/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 2/26/2022 |
| 2/25/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 3/24/2022 |
| 3/25/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 4/30/2022 |
| 4/30/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 5/28/2022 |
| 5/28/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 6/25/2022 |
| 6/25/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 7/30/2022 |
| 7/31/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 8/27/2022 |
| 8/28/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 9/30/2022 |
| 10/2/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 10/29/2022 |
| 10/30/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 11/28/2022 |
| 11/21/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 12/31/2022 |
| 12/26/2022 | "20% off all regular price purchases" | 22MADEBYYOU | 1/28/2023 |
| 1/29/2023 | "20% off all regular price purchases" | 23MIKDAILYUS | 2/25/2023 |
| 2/27/2023 | "20% off all regular price purchases" | DAILY23US | 2/28/2023 |

Franzini Decl., ¶ 4.

1
2
3

**C.     Defendant's purported "regular" prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discount.**

4      34.     Most of the Products Defendant sells are "private brand" products sold exclusively by
5   Defendant, meaning that they are not available for purchase directly from other nationwide arts and
6   crafts stores and websites like Art.com and Hobby Lobby, or from traditional big box retailers such
7   as Best Buy, Staples, Office Depot, Walmart, and Amazon.  Rather, they are only available for
8   purchase from Michaels.  Franzini Decl., ¶ 5.; *see* Michaels' 2021 10-K Report at 5.  These include
9   the following lines of Products: Recollections, Studio décor, Bead Landing, Creatology, Ashland,
10   Celebrate It, Art Minds, Artist's Loft, Craft Smart, Loops & Threads, Make Market, Foamies,
11   LockerLookz, Imagin8, and Simply Tidy.  Michaels' 2021 10-K Report at 5.  For these product lines,
12   Defendant's own prices are the prevailing market prices.  Accordingly, the prevailing market prices
13   in the last ninety days (and, for that matter, for any period) are at least 20% less than the "regular
14   prices" Defendant advertises.  Moreover, given that Defendant advertises former prices that are not
15   the prevailing market price in the last 90 days for its exclusive Products, and moreover has a history
16   of deceptive price advertising, discovery is likely to show that the advertised former prices are not the
17   prevailing market price in the last 90 days for its non-exclusive Products too.

18      **D.     Defendant's advertisements are unfair, deceptive, and unlawful.**

19      35.     Section 17500 of California's False Advertising Law prohibits businesses from
20   making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code §
21   17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

22      36.     Moreover, section 17501 of California's False Advertising Law specifically provides
23   that "[n]o price shall be advertised as a former price … unless the alleged former price was the
24   prevailing market price … within three months next immediately preceding" the advertising.  Cal.
25   Bus. & Prof. Code § 17501.

26      37.     In addition, California's Consumer Legal Remedies Act prohibits "advertising goods
27   or services with the intent not to sell them as advertised" and specifically prohibits "false or

28

misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

38.     In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

39.     And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

40.     Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises "regular" prices that are not its true "regular" prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of site-wide discounts and discounts on categories of items and individual items, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful, unfair, and deceptive business practices.

**E.     Defendant's advertisements harm consumers.**

41.     Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the "regular" prices at which Defendant usually sells its Products; that these are former prices that Defendant sold its Products at before the time-limited discount was introduced; and that these are the prevailing prices at Defendant and/or other nationwide arts and crafts chains and/or big box retailers.

42.     Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised regular price and that they will receive the advertised discount from the regular purchase price.

43.     In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

44.     Consumers that are presented with discounts are substantially more likely to make the purchase.  "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[3]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[4]

45.     Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[5]

46.     Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information.  In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products.  As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above.  So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

---

[3] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[5] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

**F.   Defendant knows that its conduct is deceptive and illegal.**

47.   Defendant is aware that the representations that it makes to consumers must be truthful.  It further knows that, when it advertises a discount, those discounts must be real, not fake.

48.   Defendant knows this because it has previously gotten into trouble with New York State for making false representations about price to consumers.  In 2011, Defendant "agreed to enter a $1.8 million settlement for engaging in deceptive advertising practices by misleading consumers into thinking they were receiving steep discounts over a two-year period."[6]

49.   As New York's Attorney General stated, "[f]or years, Michaels duped consumers into thinking they were receiving huge discounts, when in fact, they were simply paying the regular store price … Through deceptive advertising practices, this company violated the law and took advantage of hardworking consumers trying to save money."[7]

50.   Despite these charges and penalties, Defendant has continued its practice of misleading consumers into believing they are receiving discounts, when in fact it is simply playing the prevailing price.

**G.   Plaintiff was misled by Defendant's misrepresentations.**

51.   On November 28, 2022, Ms. Vizcarra purchased several items from Defendant's website.  She made those purchases while living in Salinas, California.  On the website, Defendant listed "regular" prices for each item, and was advertising a "40% OFF ALL Regular Price Purchases with code 40ENTIRE1128" promotion:



Captured November 28, 2022

---

[6] https://ag.ny.gov/press-release/2011/ag-schneiderman-secures-18-million-michaels-stores-misleading-consumers

[7] *Id.*

First Amended Class Action Complaint          23          Case No. 5:23-cv-468-BLF

52.     In addition, Defendant was advertising that certain items were on "Sale" for an even steeper discount.  A chart summarizing the online purchases Ms. Vizcarra made is shown below:

| Product | Purported "regular" price | Purported discount price |
|---|---|---|
| Academy Acrylics, 10 Color Set (Item # 10316363) | $45.99 | $27.59 |
| Royal & Langnickel Essential Brush Set (Item # 10415691) | $9.99 | $5.99 |
| Artist's Loft Firenze Filbert Brush, Size: 8 (Item # 10195284) | $16.99 | $10.19 |
| Artist's Loft Firenze Filbert Brush, Size: 12 (Item # 10195286) | $25.99 | $15.59 |
| Artist's Loft Firenze Filbert Brush, Size: 2 (Item # 10195281) | $8.99 | $5.39 |
| Artist's Loft Firenze Filbert Brush, Size: 6 (Item # 10195283) | $13.99 | $8.39 |
| Royal & Langnickel Jumbo Soft Flat Paintbrush, Size: 40 (Item # 10518495) | $14.99 | $8.99 |
| Golden Taklon Short Handle Flat Wash Brush by Artist's Loft Vienna, Size: 3/4 (Item # 10013311) | $15.99 | $9.59 |
| Acrylic Paint by Craft Smart, 2oz., Color: Holiday Red, Size: 2 (Item # 10143158) | $0.99 | $0.59 |
| Acrylic Paint by Craft Smart, 2oz., Color: Black, Size: 2 (Item # 10402491) | $0.99 | $0.59 |

| Acrylic Paint by Craft Smart, 2oz., Color: Spanish Olive, Size: 2 (Item # 10402472) | $0.99 | $0.59 |
|---|---|---|
| Acrylic Paint by Craft Smart, 2oz., Color: Turquoise, Size: 2 (Item # 10402479) | $0.99 | $0.59 |
| Acrylic Paint by Craft Smart, 2oz., Color: Shamrock Green, Size: 2 (Item # 10402467) | $0.99 | $0.59 |

53.    On January 19, 2023, Ms. Vizcarra purchased several additional items from Defendant, this time from a Michaels store in Salinas, California: a "Siser EasyPSV Permanent Glitter," a "Mini Basketball Stickers by Recollections," a "Fine Tip Permanent Marker Set by Artist's Loft in Metallic Gold," a "B2C Poster Letter," and a "Flower Truck Doormat by Ashland." Defendant listed "regular" prices for each of these items in-store, and was advertising a "20% off ALL Regular Price Purchases" with a limited-time coupon.  The coupon was purportedly only "valid through January 28, 2023."



54.     In addition, Defendant was advertising that certain items (including the Flower Truck Doorman by Ashland that Ms. Vizcarra purchased) were being offered for an even steeper "sale" of their purported "regular prices."  A screenshot of the portions of Ms. Vizcarra's receipt showing the items she purchased, the purported regular price of those items listed in-store, and the amount of purported price reductions Ms. Vizcarra received are shown below:

```
   4098593    SALE      6721 5052 004  1/19/23  17:46
ASH HELLO TRUCK D   195158862362    19.99
                           1 @ 11.99        11.99  P
B2C POSTER LETTER   195158696554     7.99
                           1 @ 6.39          6.39
       CPN GET ITM20%         1.60-
SISER PSV PERM GL   850004073353     3.99
                           1 @ 3.19          3.19
       CPN GET ITM20%          .80-
REC STKR BASKETBA   400100953419     3.49
                           1 @ 2.79          2.79
       CPN GET ITM20%          .70-
AL PERM MRKR GOLD   191518957761     2.79
                           1 @ 2.24          2.24
       CPN GET ITM20%          .55-
        YOU SAVED $     11.65
Coupon(s) Applied:
   400100020494   CPN GET ITM20%
            SUBTOTAL            26.60
      Sales Tax 9.25%            2.46
            TOTAL               29.06
```

55.     As the receipt shows, for each purchase, Defendant represented that the item had a certain regular price and that Ms. Vizcarra was receiving a substantial discount for the items that she purchased.  And her receipt states that in total, "YOU SAVED $11.65" for the five items.

56.     Ms. Vizcarra read and relied on Defendant's representations on the website and coupon and in-store described and shown above, specifically that the Products were being offered at a discount for a limited time and had the "regular" prices listed above, and used the then-available coupon code (for the website) and coupon (for the in-store purchases) to obtain the advertised discounts off the advertised purchase prices.  Based on Defendant's representations described and shown above, Ms. Vizcarra reasonably understood that the Products she was purchasing regularly (and before the promotion Defendant was advertising) retailed at the published "regular" price, that this "regular" price was the market value of the Products that she was buying, and that she was receiving the advertised discount as compared to the regular price by using a limited-time coupon or

1   coupon code that was not always available, but instead was only available for a limited time (during

2   the limited time promotion).  She would not have made these purchases if she had known that the

3   Products were not discounted as advertised, and that she was not receiving the advertised discount.

4       57.     Plaintiff faces an imminent threat of future harm.  Plaintiff would purchase Products

5   from Defendant again in the future if she could feel sure that Defendant's "regular" prices accurately

6   reflected Defendant's former prices and the market value of the Products, and that its discounts were

7   truthful.  But without an injunction, Plaintiff has no realistic way to know which—if any—of

8   Defendant's "regular" prices, discounts, and sales are not false or deceptive.  Accordingly, Plaintiff is

9   unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would

10  like to purchase.

11      **F.      Defendant breached its contract.**

12      58.     When Ms. Vizcarra purchased and paid for the Michaels Products she bought as

13  described above, she accepted offers that Defendant made, and thus, a contract was formed each time

14  that she made a purchase.  The offer was to provide Products having a particular listed regular price

15  and market value, and to provide that Product at the discounted price advertised on the website.

16      59.     For the November 2022 purchase, Defendant's website and email confirmations list

17  the market value of the items that Defendant promised to provide (which are shown above.)

18  Defendant agreed to provide a discount equal to the difference between the regular prices listed by

19  Defendant, and the prices paid by Ms. Vizcarra (also shown above).  For example, for the November

20  28, 2022 purchase, Defendant offered (among other things) to provide the Academy Acrylics, 10

21  Color Set with a market value of $45.99, for a discounted price of $27.59; and to provide a discount

22  of $18.40.

23      60.     For the January 2023 purchase, Ms. Vizcarra's receipt lists the market value of the

24  items that Defendant promised to provide.  In addition, Defendant agreed to provide the discount

25  listed on Ms. Vizcarra's receipts.  For example, for the January 19, 2023 purchase, Defendant offered

26  to provide (among other things) the Flower Truck Doormat by Ashland with a market value of

27  $19.99, for a discounted price of $11.99; and to provide a discount of $8.00.

28

61.     The regular price and market value of the items Ms. Vizcarra would receive, and the amount of the discount she would be provided off the regular price of those items, were specific and material terms of the contract.

62.     Ms. Vizcarra performed her obligations under the contract by paying for the items she purchased.

63.     Defendant breached its contract by failing to provide Ms. Vizcarra with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.

**G.     No adequate remedy at law.**

64.     Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

65.     A legal remedy is not adequate if it is not as certain as an equitable remedy.  The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.  For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months.  Cal. Bus. & Prof. Code § 17501.  Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.  As a second example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages.  No such requirements exist to obtain restitution.  Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.

66.     In addition, the remedies at law available to Plaintiff is not equally prompt or otherwise efficient.  The need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**IV.     Class action allegations.**

67.     Plaintiff brings the asserted claims on behalf of the proposed class of:

- Nationwide Class: all persons who, within the applicable statute of limitations period, purchased one or more Michaels Products advertised at a discount on Defendant's website or in-store.

- California Subclass: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Michaels Products advertised at a discount on Defendant's website or in-store.

68.     The following people are excluded from the class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability***

69.     The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are tens or hundreds of thousands of class members.

70.     Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

71.     There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

1        *Typicality & Adequacy*

2        72.      Plaintiff's claims are typical of the proposed class.  Like the proposed class, Plaintiff

3        purchased the Michaels Products advertised at a discount from Defendant.  There are no conflicts of

4        interest between Plaintiff and the class.

5        *Superiority*

6        73.      A class action is superior to all other available methods for the fair and efficient

7        adjudication of this litigation because individual litigation of each claim is impractical.  It would be

8        unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits,

9        every one of which would present the issues presented in this lawsuit.

10       **V.      Claims.**

11       **First Cause of Action:**

12       **Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et. seq.**

13       **(By Plaintiff and the California Subclass)**

14       74.      Plaintiff incorporates each and every factual allegation set forth above.

15       75.      Plaintiff brings this cause of action on behalf of herself and members of the California

16       Subclass.

17       76.      Defendant has violated Sections 17500 and 17501 of the Business and Professions

18       Code.

19       77.      Defendant has violated, and continues to violate, Section 17500 of the Business and

20       Professions Code by disseminating untrue and misleading advertisements over the internet and in

21       stores to Plaintiff and subclass members.

22       78.      As alleged more fully above, Defendant advertises former prices along with discounts.

23       Defendant does this, for example, by crossing out a higher price (e.g., $37.99) or by displaying a

24       discount price next to the "regular" price.  Defendant also does this, for example, by displaying

25       regular prices alongside discounts, for example, using a percentage discount such as "20% off regular

26       price purchases with code 22MADEBYYOU."  Reasonable consumers would understand prices

27       denoted as "regular" prices from which time-limited discounts are calculated to denote "former"

28       prices, i.e., the prices that the Defendant charged before the time-limited discount went into effect.

79.     The prices advertised by Defendant are not Defendant's "regular" prices.  In fact, those prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the product in question), because there is always a heavily-advertised coupon code and coupon-based promotion ongoing entitling consumers to a site-wide and store-wide discount.  Moreover, for the same reasons, those prices were not the former prices of the Products.  Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading.  In addition, Defendant's statements that its discounts are "limited time" and only "valid through" a particular date are false and misleading too.

80.     In addition, Defendant has violated, and continues to violate, Section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising.  As explained above, Defendant's advertised "regular" prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement.  And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.  Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

81.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing Michaels Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

82.     In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Michaels Products.

83.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

84.     Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Michaels Products if they had known the truth, and/or (b) they overpaid for the Products because the Michaels Products were sold at a price premium due to the misrepresentation.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Second Cause of Action:**

**Violation of California's Consumer Legal Remedies Act**

**(by Plaintiff and the California Subclass)**

85.    Plaintiff incorporates each and every factual allegation set forth above.

86.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

87.    Plaintiff and the subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

88.    Plaintiff and the subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

89.    The conduct alleged in this Amended Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

90.    As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to subclass members.  Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

91.    Defendant violated, and continues to violate, Section 1770 of the California Civil Code.

92.    Defendant violated, and continues to violate, Section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

93.    Defendant violated, and continues to violate, Section 1770(a)(9) of the California Civil Code.  Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

94.    And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions

on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available.

95.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

96.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Michaels Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

97.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Michaels Products.

98.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

99.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Michaels Products if they had known the discounts and/or regular prices were not real, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

100.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Ms. Vizcarra, on behalf of herself and all other members of the subclass, seeks injunctive relief.

101.    CLRA § 1782 NOTICE.  On January 25, 2023, a CLRA demand letter was sent to Defendant's California registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  In her initial Complaint, which was filed less than 30 days after the CLRA demand letter was sent, Plaintiff only sought injunctive relief, and did not seek damages, on her CLRA claim.  But she stated that "If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA."  Now,

30 days have passed and Defendant has not corrected the problem for Plaintiff and for each member of the California Subclass.  Accordingly, Plaintiff seeks all monetary and equitable relief available under the CLRA, including punitive damages and reasonable attorney fees.

102.    A CLRA venue declaration is attached.

## Third Cause of Action:
### Violation of California's Unfair Competition Law
### (by Plaintiff and the California Subclass)

103.    Plaintiff incorporates each and every factual allegation set forth above.

104.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

105.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

*The Unlawful Prong*

106.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here.  In addition, Defendant engaged in unlawful conduct by violating the FTCA.  The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements.  15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a).  As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA.  16 C.F.R. § 233.1, § 233.2.

*The Deceptive Prong*

107.    As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

108.    Defendant's representations were misleading to Plaintiff and other reasonable consumers.

109.    Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

*The Unfair Prong*

110.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

111.    Defendant violated established public policy by violating the CLRA, the FAL, and the FTCA, as alleged above and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, the FAL, and the FTCA).

112.    The harm to Plaintiff and the subclass greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

113.    Plaintiff and the subclass could not have reasonably avoided this injury.  As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

114.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

115.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Michaels Products.  Defendant's representations were a substantial factor in Plaintiff's purchase decision.

116.    In addition, subclass-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Michaels Products.

117.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass members.

118.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Michaels Products if they had known that they were not discounted, and/or (b) they overpaid for the Products because the Products were sold at the regular price and not at a discount.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>Fourth Cause of Action:</u>**

**Breach of Contract**

**(by Plaintiff and the Nationwide Class**)

119.    Plaintiff incorporates each and every factual allegation set forth above.

120.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

121.    Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's website and made purchases in-store.

122.    The contracts provided that Plaintiff and class members would pay Defendant for the Products purchased.

123.    The contracts further required that Defendant provides Plaintiff and class members with Products that have a market value equal to the regular prices displayed on the website and in-store.  They also required that Defendant provide Plaintiff and class members with a discount equal to the difference between the price paid, and the regular prices advertised.  These were specific and material terms of the contract.

124.    The specific discounts were a specific and material term of each contract.

125.    Plaintiff and class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

126.    Defendant breached its contracts with Plaintiff and class members by failing to provide Products that had a "regular" price, former price, and/or prevailing market value equal to the regular price displayed on its website and in-store, and by failing to provide the promised discount. Defendant did not provide the discount that it had promised.

127.    As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial**.**

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(by Plaintiff and the California Subclass)**

128.   Plaintiff incorporates each and every factual allegation set forth above.

129.   Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

130.   Defendant, as the designer, manufacturer, marketer, distributor, supplier, and/or seller of the Michaels Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website and in-store. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

131.   This warranty was part of the basis of the bargain and Plaintiff and members of the subclass relied on this warranty.

132.   In fact, the Michaels Products' stated market value was not the prevailing market value.  Thus, the warranty was breached.

133.   Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on January 25, 2023.

134.   Plaintiff and the subclass were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Michaels Products if they had known that the warranty was false, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

**Sixth Cause of Action:**

**Breach of Implied Warranty**

**(by Plaintiff and the California Subclass)**

135.   Plaintiff incorporates each and every factual allegation set forth above.

136.   Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

137.    As described in greater detail above, Defendant impliedly warranted that the Michaels Products had a market value equal to the regular price displayed on Defendant's website and in-store.

138.    This warranty was part of the basis of the bargain and Plaintiff and members of the subclass relied on this warranty.

139.    In fact, the Michaels Products did not have a market value equal to the regular price displayed.  Thus, the warranty was breached.

140.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's headquarters, on January 25, 2023.

141.    Plaintiff and the subclass were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Michaels Products if they had known the truth, or (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty.

**Seventh Cause of Action:**

**Quasi-Contract/Unjust Enrichment**

**(by Plaintiff and the Nationwide Class)**

142.    Plaintiff incorporates each and every factual allegation set forth above.

143.    Plaintiff brings this cause of action on behalf of herself and the Nationwide Class.  In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

144.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Michaels Products and to pay a price premium for these Products.

145.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

146.    Plaintiff and the class seek restitution.

**Eighth Cause of Action:**

**Negligent Misrepresentation**

**(by Plaintiff and the California Subclass)**

147.    Plaintiff incorporates each and every factual allegation set forth above.

148.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

149.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

150.    These representations were false.

151.    When Defendant made these misrepresentations, it knew or should have known that they were false.  Defendant had no reasonable grounds for believing that these representations were true when made.

152.    Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

153.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Michaels Products.

154.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

155.    Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Michaels Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

## Ninth Cause of Action:

## Intentional Misrepresentation

## (by Plaintiff and the California Subclass)

156.    Plaintiff incorporates each and every factual allegation set forth above.

157.    Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

158.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and subclass members concerning the existence and/or nature of the discounts and savings advertised.

159.    These representations were false.

160.    When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

161.    Defendant intended that Plaintiff and subclass members rely on these representations and Plaintiff and subclass members read and reasonably relied on them.

162.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Michaels Products.

163.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and subclass members.

164.    Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Michaels Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

**VI.    Relief.**

165.    Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

Dated: May 3, 2023                                    Respectfully submitted,

                                                      By: /s/ *Simon Franzini*
                                                      Simon Franzini (Cal. Bar No. 287631)
                                                      simon@dovel.com
                                                      Christin Cho (Cal. Bar No. 238173)

christin@dovel.com
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*