Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEA VIZCARRA, individually and on behalf of all others similarly situated,<br><br>        *Plaintiff*,<br><br>v.<br><br>MICHAELS STORES, INC.,<br><br>        *Defendant*. | Case No. 5:23-cv-468-BLF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing Date:  October 26, 2023<br>Time:              9:00 a.m.<br>Courtroom:    Courtroom 3, 5th Floor<br><br>Hon. Beth L. Freeman |

**Table of Contents**

I.      Introduction. ................................................................................................... 1

II.     Defendant's deceptive pricing scheme............................................................ 1

III.    Ms. Vizcarra states a claim for violations of California's False Advertising Law. ................. 2

IV.     Ms. Vizcarra's fraud-based claims satisfy Rule 9(b). ...................................... 6

        A.      Ms. Vizcarra pleads deception with particularity. ........................................ 7

        B.      Ms. Vizcarra pleads that Defendant's "regular" prices are not the prevailing market

                prices with particularity; and only her section 17501 claims require this.................... 8

V.      The economic loss rule does not bar Ms. Vizcarra's intentional misrepresentation claims. ...12

VI.     Ms. Vizcarra states claims for breach of contract and breach of warranty. ...........................13

VII.    Ms. Vizcarra states a claim for unjust enrichment. ................................................14

VIII.   Ms. Vizcarra can seek CLRA damages........................................................15

IX.     The Court should not strike the class allegations.................................................16

X.      The Court should not dismiss the nationwide class claims....................................18

XI.     Conclusion. ...................................................................................................19

1

**Table of Authorities**

2

**Cases**

3    *Allen v. ConAgra Foods, Inc.*,

4        331 F.R.D. 641 (N.D. Cal. 2019) ............................................................................18

5    *Allen v. Hyland's Inc.*,

6        300 F.R.D. 643 (C.D. Cal. 2014) ............................................................................19

7    *Allen v. Hylands, Inc.*,

8        2012 U.S. Dist. LEXIS 61606 (C.D. Cal. May 2, 2012) ........................................18

9    *Arabian v. Organic Candy Factory*,

10        2018 U.S. Dist. LEXIS 45833 (C.D. Cal. Mar. 19, 2018) ......................................13

11    *Azimpour v. Sears, Roebuck & Co.*,

12        No. 15-cv-2798-JLS (WVG), 2017 U.S. Dist. LEXIS 63516 (S.D. Cal. Apr. 26, 2017)..................3

13    *Bruno v. Eckhart Corp.*,

14        280 F.R.D. 540 (C.D. Cal. 2012) ............................................................................19

15    *Carvalho v. HP, Inc.*,

16        No. 21-cv-08015-BLF, 2022 U.S. Dist. LEXIS 112577 (N.D. Cal. June 24, 2022) ....................3, 5

17    *Chase v. Hobby Lobby Stores, Inc.*,

18        No. 17-cv-00881-GPC-BLM, 2018 U.S. Dist. LEXIS 21165 (S.D. Cal. Feb. 8, 2018).............7, 10

19    *Clay v. Cytosport, Inc.*,

20        2018 U.S. Dist. LEXIS 153124 (S.D. Cal. Sep. 7, 2018) ........................................19

21    *Covell v. Nine W. Holdings, Inc.*,

22        No. 3:17-cv-01371-H-JLB, 2018 U.S. Dist. LEXIS 12437 (S.D. Cal. Jan. 25, 2018) ..................11

23    *Digiacinto v. RB Health* (US) LLC,

24        No. 22-cv-04690-DMR, 2023 U.S. Dist. LEXIS 63691 (N.D. Cal. Apr. 11, 2023)........................13

25    *Evans v. DSW, Inc.*,

26        No. 16-cv-3791-JGB (SPx), 2017 U.S. Dist. LEXIS 220513 (C.D. Cal. Feb. 2, 2017)...................4

27    *Freeman v. Indochino Apparel*, Inc.,

28        443 F. Supp. 3d 1107 (N.D. Cal. 2020) ..................................................................14

1  *Freund v. HP, Inc.*,
2      No. 22-cv-03794-BLF, 2023 U.S. Dist. LEXIS 7187 (N.D. Cal. Jan. 13, 2023) ...........................12
3  *Garcia v. GM LLC*,
4      No. 18-cv-01893-JLS-KES, 2019 U.S. Dist. LEXIS 8678 (C.D. Cal. Jan. 17, 2019)....................12
5  *Haley v. Macy's, Inc.*,
6      No. 15-cv-06033-HSG, 2017 U.S. Dist. LEXIS 210486 (N.D. Cal. Dec. 21, 2017) ......................10
7  *Harris v. Atl. Richfield Co.*,
8      14 Cal. App. 4th 70 (1993) ............................................................................................................12
9  *Henryhand v. Dorel Juvenile Grp., Inc.*,
10      2017 U.S. Dist. LEXIS 219681 (C.D. Cal. Aug. 9, 2017).................................................................9
11  *Herron v. Best Buy Stores, Ltd. P'ship*,
12      2014 U.S. Dist. LEXIS 14000 (E.D. Cal. Feb. 3, 2014) .................................................................16
13  *Knapp v. Art.com, Inc.*,
14      No. 16-cv-00768-WHO, 2016 U.S. Dist. LEXIS 78128 (N.D. Cal. June 15, 2016) .................3, 5, 8
15  *Lemus v. Rite Aid Corp.*,
16      613 F. Supp. 3d 1269 (C.D. Cal. 2022) .........................................................................................13
17  *Mazza v. Am. Honda Motor Co.*,
18      666 F.3d 581 (9th Cir. 2012)..........................................................................................................18
19  *Mednick v. Precor, Inc.*,
20      320 F.R.D. 140 (N.D. Ill. 2017) .....................................................................................................18
21  *MetroPCS v. SD Phone Trader*,
22      187 F. Supp. 3d 1147 (S.D. Cal. 2016)............................................................................................6
23  *Munning v. Gap, Inc.*,
24      No. 16-cv-03804-TEH, 2016 U.S. Dist. LEXIS 149886 (N.D. Cal. Oct. 28, 2016) ................13, 14
25  *Ogola v. Chevron Corp.*,
26      No. 14-cv-173-SC, 2014 U.S. Dist. LEXIS 117397 (N.D. Cal. Aug. 21, 2014) ......................17, 18
27  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
28      31 F.4th 651 (9th Cir. 2022) ..........................................................................................................17

*Park v. Cole Haan, LLC*,

    No. 17-cv-1422-LAB (BGS), 2019 U.S. Dist. LEXIS 41889 (S.D. Cal. Mar. 13, 2019) ................4

*Phan v. Sargento Foods, Inc.*,

    2021 U.S. Dist. LEXIS 103629 (N.D. Cal. June 2, 2021) ...............................................19

*Plaksin v. Newsight Reality*,

    No. 19-cv-00458-RGK-SS, 2019 U.S. Dist. LEXIS 168063 (C.D. Cal. Apr. 30, 2019)................15

*Rabin v. Google LLC*,

    No. 22-cv-04547-BLF, 2023 U.S. Dist. LEXIS 104694 (N.D. Cal. June 15, 2023) ......................15

*Real v. Y.M.I. Jeanswear, Inc.*,

    No. 17-cv-870-JGB (DTBx), 2017 U.S. Dist. LEXIS 237643 (C.D. Cal. Sep. 1, 2017) ..........10, 12

*Robinson Helicopter Co., Inc. v. Dana Corp.*,

    34 Cal. 4th 979 (2004) .........................................................................................12

*Safransky v. Fossil Grp., Inc.*,

    No. 17-cv-1865-MMA (NLS), 2018 U.S. Dist. LEXIS 60946 (S.D. Cal. Apr. 9, 2018) ...............11

*Schwartz v. Lights of Am.*,

    2012 U.S. Dist. LEXIS 142789 (C.D. Cal. Aug. 31, 2012).................................................18

*So v. HP, Inc.*,

    No. 22-cv-02327-BLF, 2022 U.S. Dist. LEXIS 206470 (N.D. Cal. Nov. 14, 2022)................18, 19

*Spann v. J.C. Penney Corp.*,

    307 F.R.D. 508 (C.D. Cal. 2015) ...............................................................................8

*Spintouch, Inc. v. Outform, Inc.*,

    No. 21-cv-00840-DOC-ADS, 2021 U.S. Dist. LEXIS 246060 (C.D. Cal. Nov. 8, 2021) .............13

*Stathakos v. Columbia Sportswear Co.*,

    No. 15-cv-04543-YGR, 2016 U.S. Dist. LEXIS 58310 (N.D. Cal. May 2, 2016) ........................11

*Taylor v. Shutterfly, Inc.*,

    No. 18-cv-00266-BLF, 2020 U.S. Dist. LEXIS 47931 (N.D. Cal. Mar. 19, 2020)........................18

*Wehlage v. EmpRes Healthcare Inc.*,

    2012 U.S. Dist. LEXIS 14157 (N.D. Cal. Feb. 6, 2012)..................................................16

*White v. FCA US LLC*,

   No. 22-cv-00954-BLF, 2022 U.S. Dist. LEXIS 146604 (N.D. Cal. Aug. 16, 2022)......................12

*Williams v. Gerber Prods. Co.*,

   552 F.3d 934 (9th Cir. 2008)...................................................................................................5

**Statutes**

Cal. Bus. & Prof. Code § 17500 ...............................................................................................2

Cal. Bus. & Prof. Code § 17501 ...............................................................................................3

Cal. Civ. Code § 1770(a)(9).......................................................................................................8

Cal. Civ. Code § 1782(a) .........................................................................................................15

Cal. Civ. Code § 1782(d) ....................................................................................................15, 16

1  **I.      Introduction.**

2         Defendant prominently advertises sitewide and storewide discounts of 20% or more off of its

3  "regular" prices using coupons and coupon codes. It represents that discount offers are time-limited

4  and expiring soon. Based on this, consumers reasonably believe that that if they buy now, they will

5  get a special, lower-than-usual price. But in truth, Defendant's discount offers are permanent.

6  Coupons and coupon codes for discounts of 20% or more off the "regular" prices are always

7  available. Defendant's ads are deceptive and illegal.

8         Ms. Vizcarra brought this case to put an end to Defendant's deceptive price advertising, and

9  to seek compensation for consumers who, like her, were deceived. She asserts claims under

10  California's consumer protection statutes on behalf of California consumers, and common law claims

11  on behalf of consumers nationwide.

12         Defendant moves to dismiss each of Ms. Vizcarra's claims. Defendant's primary defense is

13  that consumers only get the discount if they use the advertised coupon or coupon code—meaning that

14  any consumers who doesn't, has to pay the listed "regular" price. Defendant claims that this renders

15  its ads non-deceptive. Defendant's ads, however, represent *that the coupon-based discount* is time-

16  limited and expires soon—meaning that consumers usually have to pay the listed "regular" price.

17  And this is not true: the coupon-based discount is not time-limited and never expires; and as a result,

18  consumes never have to pay the "regular" price to buy its products. So Defendant's ads are deceptive

19  regardless of whether some consumers don't use the coupon and so pay full price, even though a

20  discount is available. Plus, Defendant prominently and repeatedly touts that a 20% or more off

21  discount is available, including on its home page, on each product's description, and during check

22  out—making it impossible for consumers to miss that the coupon-based discount is available. So

23  very few, if any, of Defendant's consumers actually pay the listed "regular" price.

24         This argument, and Defendant's other arguments, have been rejected in similar cases

25  involving indistinguishable deceptive pricing schemes. The Court should reject them here too.

26  **II.     Defendant's deceptive pricing scheme.**

27         Defendant sells arts, crafts, and other décor products, online at Michaels.com, and in brick-

28  and-mortar stores across the country. Dkt. 26 (First Amended Complaint) ("FAC" or "Complaint")

¶8. Both online and in-store, Defendant prominently advertises purported limited-time sales. *Id.* ¶¶10-11, 23-27. Defendant's ads represent that consumers can receive discounts off of "regular" prices (for example, "20% off regular prices") using a coupon or coupon code. FAC ¶¶24-27. They also represent that the promotions are time-limited and expire soon (for example: "THRU SAT 1/30/21," *id.* ¶25; "valid through July 31, 2021," *id.* ¶27).

Defendant's ads convey that, by using the coupon or coupon code during the promotion, consumers will get a special discount off of Defendant's regular prices that is not usually available. FAC ¶¶28-30. Consumers reasonably believe Defendant's ads, and think that the "regular" prices Defendant lists for its products (the ones to which the discount is applied) are the prices that consumers usually and regularly have to pay to buy Defendant's products. *Id.*; *see*, *e.g.*, https://www.dictionary.com/browse/regular ("regular" means "usual; normal; customary"). Based on this, consumers buy quickly, while the purported sale is still available, believing that this will get them a special deal on a product worth more than what they are paying. *Id.*; *see, e.g., id.* ¶¶44-46 (summarizing example research showing how discounts drive sales).

In truth, coupons for discounts of at least 20% are always available, and always prominently advertised. So "Defendant's Products are always available for at least 20% less than [Defendant's advertised 'regular' prices], and customers did not have to formerly pay that amount to get those items." FAC ¶30. "The 'regular' prices Defendant advertises are not actually Defendant's 'regular' or former prices, or the prevailing prices for the Products Defendant sells." FAC ¶30. Rather, the regular and prevailing prices for Defendant's products are the coupon discount prices, which are at least 20% less than the advertised "regular" ones. In addition, "[t]he purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all." *Id.* And the purported discounts are not time-limited: "quite the opposite, they are always available." *Id.*

## III.    Ms. Vizcarra states a claim for violations of California's False Advertising Law.

Count I asserts claims for violations of two sections of California's False Advertising Law (the "FAL"): section 17500 and section 17501. FAC ¶¶74-84 (Count I). Section 17500 governs advertising conduct in general. It prohibits making or disseminating "any statement … which is untrue or misleading." Cal. Bus. & Prof. Code § 17500. This "create[s] liability for deceptive

1    [advertising] in the eyes of a reasonable consumer." *Carvalho v. HP, Inc.*, No. 21-cv-08015-BLF,

2    2022 U.S. Dist. LEXIS 112577, at *15 (N.D. Cal. June 24, 2022) (Freeman, J.). Section 17501

3    "governs a specific type of advertising conduct: former prices. [It] states that '[n]o price shall be

4    advertised as a former price of any advertised thing, unless the alleged former price was the

5    prevailing market price' within certain periods." *Id.*

6          Ms. Vizcarra's detailed allegations (summarized in the preceding section) are more than

7    sufficient to plead violations of both sections. Taken as true—as they must be at this stage—they

8    establish that Defendant makes statements that are untrue and misleading: about its "regular prices";

9    about the existence of time-limited sales or promotions; about how customers will receive a discount

10   or "percent off" if they purchase during such a purported promotion, as well as the amount of that

11   discount; and about how those purported promotions are time-limited and expire soon. *See, e.g.*, FAC

12   ¶¶77-79; §II above (summarizing allegations more fully). This establishes a violation of section

13   17500's general prohibition on untrue and misleading statements.

14         In addition, Ms. Vizcarra's allegations establish that Defendant's ads convey to reasonable

15   consumer that prices Defendant lists are Defendant's "regular" prices; the ones Defendant normally

16   and usually charges when no promotion is running—including before the promotion advertised at any

17   given time started. *See* §II. So "reasonable consumers reasonably believe that the 'regular' prices

18   Defendant advertises represent the amount that consumers formerly had to pay for Defendant's

19   goods, before the limited-time sale" being advertised at any given time "began." *See, e.g.*, FAC ¶29.

20   In other words, they reasonably believe that the advertised "regular" prices are Defendant's former

21   prices—the usual prices it charged before the purported sale began. *Id.* But these alleged former

22   prices "were not the prevailing prices" during relevant timeframe, *see* FAC ¶34; §IV(B) (explaining

23   this in detail). So, Ms. Vizcarra's allegations establish a violation of section 17501, too. *See, e.g.,*

24   *Azimpour v. Sears, Roebuck & Co.*, No. 15-cv-2798-JLS (WVG), 2017 U.S. Dist. LEXIS 63516, at

25   *20-21 (S.D. Cal. Apr. 26, 2017) (holding that advertising fictitious "regular" prices violates section

26   17501); *Knapp v. Art.com, Inc.*, No. 16-cv-00768-WHO, 2016 U.S. Dist. LEXIS 78128, at *12 (N.D.

27   Cal. June 15, 2016) ("A reasonable consumer does not need language such as, 'Formerly $9.99, Now

28   40% Off $9.99,' or, '40% Off the Former Price of $9.99,' to reasonably understand '40% off' to

1   mean 40% off the former price of the product."); *Park v. Cole Haan, LLC*, No. 17-cv-1422-LAB

2   (BGS), 2019 U.S. Dist. LEXIS 41889, at *7-8 (S.D. Cal. Mar. 13, 2019) ("a sign saying '50% off,'

3   implying that the asking price of $91 represented a 50% discount from a price previously charged for

4   the same pair of shoes," was a former price comparison).

5         Defendant asserts that Ms. Vizcarra's FAL claim should be dismissed because the "regular"

6   prices the Complaint challenges "are not 'former prices' at all" and are instead "***the actual current***

7   ***price of an item unless a consumer enters a promotional code online or uses a coupon in store***."

8   Mot. 6 (emphasis Defendant's). But as explained above, Defendant's advertisements convey that the

9   "regular" prices are the prices that consumers usually and regularly must pay when they do not use a

10  coupon or coupon code—not just "currently" (as Defendant claims) but normally and usually,

11  whenever no purportedly time-limited promotion is running. And, as the Complaint alleges—given

12  Defendant's "% off regular prices" statements and strike-through prices, combined with its

13  representations that promotion is time-limited and expiring soon—"reasonable consumers reasonably

14  believe that, prior to the supposedly time-limited coupon-based sale," no coupon was available and

15  so "consumers had to pay the 'regular' price to get the item and did not have the opportunity to get a

16  discount from that 'regular' price." FAC ¶29. Said differently, by 1) advertising "regular" prices that

17  apply when no coupon or coupon code is used and 2) representing that the coupon-based sale is a

18  special limited-time promotion, Defendant *is* making representations about former prices. It is

19  representing that the "regular" prices it lists are the ones consumers have to pay usually, including

20  before the supposed time-limited coupon promotion became available.

21        Plus, at a minimum, there is a factual dispute about whether reasonable consumers would

22  understand Defendant's statements to be making a comparison to former prices (and not just current

23  non-coupon prices). At this stage, such factual disputes cannot be resolved in Defendant's favor.

24  *Evans v. DSW, Inc.*, No. 16-cv-3791-JGB (SPx), 2017 U.S. Dist. LEXIS 220513, at *22-24 (C.D.

25  Cal. Feb. 2, 2017) (holding that "the Court will not delve into the issues of fact going to the heart of

26  the dispute on a motion to dismiss—namely, whether reasonable consumers would find [the

27  defendant's] reference prices to be misleading or deceptive" because "whether reasonable consumers

28  would be deceived is a question of fact, usually inappropriate for the Court's determination at the

1   motion to dismiss stage"); *see Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008)

2   (under California law, "whether a business practice is deceptive will usually be a question of fact not

3   appropriate for decision on demurrer.").

4          For all these reasons, another court in this district rejected this very argument in a case against

5   Defendant's competitor, Art.com, on indistinguishable facts. *Knapp v. Art.com, Inc.,* 2016 U.S. Dist.

6   LEXIS 78128, at *12 (N.D. Cal. June 15, 2016). There, like here, Art.com advertised purportedly

7   time-limited "% OFF" discounts that in truth were always available. *Id.* at *3. Like here, consumers

8   had to enter coupon codes to get the discount. *Id*. And like here, Art.com moved to dismiss, making

9   the identical argument that Defendant makes here: "that section 17501 does not apply because

10  Art.com's sales require consumers to enter a coupon code to obtain the advertised sale price, meaning

11  that its sales merely compare 'two current prices' — i.e., the coupon price and the non-coupon

12  price—not a former non-sale price and a current sale price." *Id*. at *14. The court rejected this

13  argument and denied the motion, reasoning that the "'40% off' language [the plaintiff] viewed

14  objectively qualifies as former price advertising within the meaning of section 17501" for the reasons

15  just explained. "Against this backdrop," the court held, "it is not clear why it matters that [the

16  plaintiff] was required to enter a coupon code to obtain the advertised 40 percent discount." *Id.* at

17  *14-15; *id*. n. 4 (setting forth additional reasons why this argument lacks merit).

18         Defendant cites the Court's decision in *Carvalho v. HP, Inc.*, No. 21-cv-08015-BLF, 2022

19  U.S. Dist. LEXIS 112577 (N.D. Cal. June 24, 2022). Mot. 6. But there, the defendant's website

20  clearly explained that the advertised "strikethrough" prices were MSRPs and not former prices. *Id.* at

21  *16. It was for this reason that the Court concluded that the defendant's advertisements were not

22  making comparisons to former prices. Here, there is nothing similar. There is not, for example, a

23  disclaimer explaining that the prices Defendant lists are ones no one ever actually has to pay, because

24  coupon-based discounts are always available. Quite the opposite, Defendant affirmatively represents

25  that the prices it advertises are its "regular" prices, which, as explained above, conveys to reasonable

26  consumers that these are the prices that consumers usually have to pay when no promotion is

27  available—including before the time-limited promotion they think they are getting supposedly began.

28

**IV.    Ms. Vizcarra's fraud-based claims satisfy Rule 9(b).**

Defendant argues that Ms. Vizcarra's fraud-based claims do not satisfy Rule 9(b). Mot. 9-15. But "[a] pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged." *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016). And as summarized below, the Complaint does this here.

Who: "Defendant Michaels Stores, Inc." FAC ¶18.

What: "Defendant advertises steep site-wide and store-wide discounts on all 'regular price' items using a coupon code" that "offer[s] at least 20% off the 'regular' prices Defendant advertises." FAC ¶25; *see id.* (providing numerous examples of this); *id.* ¶¶51, 53 (showing the specific advertisements Ms. Vizcarra saw). "In addition, at any given time, Defendant represents that many categories of Products are "on sale" at an even steeper discount than the one that applies site-wide." FAC ¶26; *see id.* ¶52 (showing this for Ms. Vizcarra).

When: from at least "January 2021 to the present," FAC ¶32, and including specifically "[on] November 28, 2022" and "[o]n January 19, 2023," when Ms. Vizcarra made her purchases. FAC ¶¶51, 53.

Where: "on a red, attention-grabbing banner on its homepage; on the search page (again, in attention-grabbing red font) next to the price of each 'regular' priced item; on the product page for each 'regular' price item; on the 'shopping cart' page; [] during checkout;" and in store. *Id.* ¶25-27; *see id.* (showing examples).

How: As explained in greater detail above (*see* §II), Defendant's advertisements convey to reasonable consumers that a special promotion is running for a limited time and that, as a result, consumers who buy during the promotion will get a special deal and pay less than they would usually have to pay for Defendant's products. FAC ¶¶28-30. In truth, the supposed limited time promotion is always available. So consumers who buy during the promotion do not get a special deal. Nor will they pay less than they would usually have to pay: they could *always* pay at least 20% less than Defendant's supposedly "regular" prices using an always-available coupon. *Id.* ¶30; *see* ¶¶31-34.

Defendant makes several challenges to the sufficiency of Plaintiff's allegations. They are addressed in turn.

1

## A.    Ms. Vizcarra pleads deception with particularity.

2      Defendant points out that although "% off" discounts are always "available," consumers need

3 to use a coupon or coupon code to actually get the discount. Mot. 10. Defendant asserts that, as a

4 result, it is "baseless" to allege that its products are always sold at a discount; and so Ms. Vizcarra

5 fails to plausibly plead "'what is false or misleading' about Michaels discount promotions, and 'why

6 it is false.'" *Id.*

7      But Ms. Vizcarra is not alleging that everybody always uses a coupon, and so Defendant's

8 products are always sold at a discount. Nor is this allegation necessary to establish that Defendant's

9 ads are deceptive. Rather—as the full sentences that Defendant selectively quotes from make clear—

10 what she alleges is that "Defendant's Products are always *available* for at least 20% less than" the

11 purportedly regular price. FAC ¶30 (emphasis added); *see id.* ¶12 (alleging that "Defendant's site-

12 wide and store-wide discounts are always *available*") (emphasis added). And this is renders

13 Defendant's ads deceptive because, as explained above, it means that consumers who buy during a

14 supposed promotion are not getting any sort of special limited-time deal; and moreover, it means that

15 the purported "regular" prices are never the prices that consumers actually have to pay to buy

16 Defendant's products from Defendant. Instead, they can always get Defendant's products for at least

17 20% less than the advertised "regular" price, by using a coupon.

18      Plus, as the Complaint alleges, Defendant advertises its coupons "extensively: on a red,

19 attention-grabbing banner on its homepage; on the search page (again, in attention-grabbing red font)

20 next to the price of each 'regular' priced item; on the product page for each 'regular' price item; on

21 the 'shopping cart' page; and during checkout." FAC ¶25; *id.* (showing numerous examples). So it is

22 reasonable to infer that the vast majority of Defendant's customers notice and use the coupon. Why

23 would they not? And, if Defendant is suggesting that its advertised prices are bona fide "regular"

24 prices because its customers frequently do not use the always-available coupon and instead pay full

25 price even though they could pay 20% less by simply entering a prominently-advertised coupon code,

26 that's a factual issue that cannot be resolved in Defendant's favor on the pleadings. *See, e.g., Chase v.*

27 *Hobby Lobby Stores, Inc.*, No. 17-cv-00881-GPC-BLM, 2018 U.S. Dist. LEXIS 21165, at *12-14

28 (S.D. Cal. Feb. 8, 2018) (holding that "given the factual inquiry required to adequately assess the

1    merits of the reasonable consumer standard, the court cannot find at the motion to dismiss stage that

2    [defendant's] advertising scheme would not mislead a reasonable consumer" and collecting cases).

3        **B.      Ms. Vizcarra pleads that Defendant's "regular" prices are not the prevailing**

4              **market prices with particularity; and only her section 17501 claims require this.**

5        Defendant argues that Ms. Vizcarra fails to sufficiently allege that its purportedly "regular"

6    prices are not the prevailing market prices. Mot. 11-12 (non-exclusive products), 13-14 (exclusive

7    products); Mot. 14 (the products Ms. Vizcarra herself purchased). Defendant suggests that all of Ms.

8    Vizcarra's fraud-based claims should be dismissed for this reason. *Id*. This argument lacks merit.

9        To start, only Ms. Vizcarra's section 17501 claims depend on Defendant's purported

10   "regular" prices being out of line with the prevailing market prices. *See* §III above (discussing

11   section 17501). Her remaining claims do not. For example, as explained above, section 17500 sweeps

12   far more broadly than section 17501 and prohibits untrue or misleading advertisements generally

13   (and not just former price comparisons where the former price is out of line with prevailing market

14   prices specifically). Similarly, the CLRA prohibits any false or misleading statements concerning the

15   "existence of, or amounts of price reductions" (and not just ones where the price to which the

16   reduction is applied is out of line with the prevailing market price specifically). Cal. Civ. Code §

17   1770(a)(9). So to state a claim for violations of these statutes—as well as the rest of her other claims

18   other than those based on violations of section 17501—Ms. Vizcarra does not need to allege that

19   Defendant's "regular" prices are out of line with prevailing market prices. *See Spann v. J.C. Penney*

20   *Corp.*, 307 F.R.D. 508, 528-29 (C.D. Cal. 2015) (expressly rejecting this argument) ("even if it were

21   determined that defendant's advertising did not violate § 17501, it could still be liable under the

22   CLRA, the UCL and the more general provision of the FAL"). Regardless of how Defendant's

23   advertised "regular" prices compare to the prevailing market prices, Defendant's ads are plausibly

24   deceptive because they falsely convey that *Defendant's own* regular prices are higher than they truly

25   are. *See, e.g.*, *Knapp v. Art.com, Inc*., 2016 U.S. Dist. LEXIS 78128, at *10 (N.D. Cal. June 15, 2016)

26   (that a defendant "does not ordinarily sell its products at the advertised regular prices" violates

27   section 17500, regardless of whether those "advertised regular prices are out of step with prevailing

28

1  market prices"); *id*. (same statements violate CLRA).[1] So Defendant's arguments about prevailing

2  market prices cannot possibly justify dismissing any of Ms. Vizcarra's non-section 17501 claims.

3      In addition, Ms. Vizcarra *does* sufficiently allege that Defendant's purported "regular" prices

4  are not the prevailing market prices. Ms. Vizcarra alleges (and provides detailed evidence showing)

5  that Defendant's purportedly "regular" prices are not the prices that consumers regularly must pay or

6  do pay to purchase Defendant's products from Defendant. *See* §II above (explaining this and

7  summarizing the allegations and inferences from the evidence showing this); FAC ¶31-33, Franzini

8  Decl. ¶4 (setting forth the results of a detailed investigation into Defendant's promotional pricing).

9  She also alleges that "[m]ost of the Products Defendant sells are 'private brand' products sold

10  exclusively by Defendant, meaning that they are not available for purchase directly from other

11  nationwide arts and crafts stores and websites like Art.com and Hobby Lobby, or from traditional big

12  box retailers such as Best Buy, Staples, Office Depot, Walmart, and Amazon." FAC ¶34. So for the

13  private brand products, Defendant's coupon prices—which are at least 20% lower than the purported

14  "regular" prices—are the prevailing market price. *Id*. And "given that Defendant advertises former

15  prices that are not the prevailing market price in the last 90 days for its exclusive Products, and

16  moreover has a history of deceptive price advertising," it is reasonable to infer that the prevailing

17  market prices for Defendant's remaining products (the non-private brand products, which are also

18  sold at other retailers) are lower than Defendant's purported "regular" prices too. *Id*.; *see, e.g., Chase*

19  *v. Hobby Lobby Stores, Inc.*, No. 17-cv-00881-GPC-BLM, 2018 U.S. Dist. LEXIS 21165, at *11

---

21      [1] In addition, Ms. Vizcarra asserts claims under the "unlawful" and "unfair" prongs of the

22  UCL. FAC ¶¶106 (unlawful); ¶¶110-114 (unfair). These claims do not require Ms. Vizcarra to

23  plausibly allege a deceptive statement at all, much less one involving prevailing prices. And

24  Defendant does not address these claims, much less show that they are not adequately pleaded. So

25  Defendant cannot carry its burden as to the UCL claims. *See, e.g., Henryhand v. Dorel Juvenile Grp.,*

26  *Inc*., 2017 U.S. Dist. LEXIS 219681, at *25 (C.D. Cal. Aug. 9, 2017) (plaintiff plausibly alleged

27  claims under the "unlawful" and "unfair" prongs of the UCL in the absence of a sufficiently pleaded

28  misrepresentation or omission).

1    (S.D. Cal. Feb. 8, 2018) ("Taking Plaintiff's alleged facts as true and drawing all reasonable

2    inferences in favor of the plaintiff, the Court concludes that it is plausible that a 'reasonable

3    consumer' could have been misled by plaintiff's advertising."). So Defendant's argument fails with

4    respect to Ms. Vizcarra's section 17501 claims too.

5        Defendant points out that although its private brand products are not available for purchase

6    directly from other art supply stores or from any major retail chain such as Best Buy or Staples, they

7    are available for purchase through Amazon and Walmart's third-party marketplace, where they are

8    listed at Defendant's full "regular" price. Mot. 13-14. What Defendant means is that some non-

9    Amazon, non-Walmart sellers obtain Defendant's proprietary, private brand products—presumably

10   by buying them from Defendant at a discount using a coupon or coupon code—and then resell them

11   on Amazon and Walmart's marketplace at Defendant's purported "regular," non-discounted price.

12   Defendant suggests that this renders the Complaint's allegations that Defendant's discounted prices

13   are the prevailing market prices for its private-brand products "implausible." Mot. 13. But to show

14   that Defendant's "regular" prices are not the prevailing market prices, Ms. Vizcarra does not need to

15   establish that no sales are ever made at Defendant's "regular" prices. She only needs to plausibly

16   allege that Defendant's "regular" prices are not the "predominant" prices, and that they are not the

17   "most widely occurring or accepted" prices in the relevant market. *See Haley v. Macy's, Inc.*, No. 15-

18   cv-06033-HSG, 2017 U.S. Dist. LEXIS 210486, at *18-19 (N.D. Cal. Dec. 21, 2017). And applying

19   the motion to dismiss standard, it is certainly plausible to infer that the predominant and most widely

20   occurring or accepted price for Defendant's proprietary, private brand products are Defendant's own

21   prices and not the prices of third-party sellers who buy Defendant's products from Defendant and

22   then re-sell them on Amazon and Walmart's marketplace at a markup. This is especially true given

23   that those third-party sellers' prices are 20% or more higher than Defendant's, meaning that

24   consumers have a strong incentive to buy directly from Defendant. *E.g., Real v. Y.M.I. Jeanswear,*

25   *Inc.*, No. 17-cv-870-JGB (DTBx), 2017 U.S. Dist. LEXIS 237643, at *8 (C.D. Cal. Sep. 1, 2017)

26   (denying motion to dismiss because, "[w]hile the investigation, does not prove Plaintiffs' claims, it

27   plausibly suggests the relevant items on Defendants' website were not offered at the stated former

28   prices"); *see Safransky v. Fossil Grp., Inc.*, No. 17-cv-1865-MMA (NLS), 2018 U.S. Dist. LEXIS

60946, at *35 (S.D. Cal. Apr. 9, 2018) ("Plaintiff is 'not required to plead that [he] has conducted a pre-suit investigation—or include the results of such investigations—in every case, particularly where the information is not within the personal knowledge of the pleader.'") (quoting *Stathakos v. Columbia Sportswear Co.*, No. 15-cv-04543-YGR, 2016 U.S. Dist. LEXIS 58310, at *9 (N.D. Cal. May 2, 2016)); *Covell v. Nine W. Holdings, Inc.*, No. 3:17-cv-01371-H-JLB, 2018 U.S. Dist. LEXIS 12437, at *11-12 (S.D. Cal. Jan. 25, 2018) (applying "relaxed" Rule 9(b) standard and accepting as sufficient allegations that reference price was "fictitious").

Defendant also complains that for the non-private brand products, Ms. Vizcarra did not track prices at other retailers to show that Defendant's "regular" prices are out of line with the prevailing prices at other retailers. Mot. 12. But as the Complaint alleges, "given that Defendant advertises former prices that are not the prevailing market price in the last 90 days for its exclusive Products, and moreover has a history of deceptive price advertising," it is plausible, and reasonable to infer, that the purported "regular" prices for Defendant's remaining products are out of step with the prevailing market prices too. FAC ¶34. And this is all that is needed at this stage.

Finally, Defendant asserts that the Complaint "does not allege any investigation of the specific items Plaintiff purchased." Mot. 14. This is not true. Ms. Vizcarra alleges that she performed a detailed investigation into Defendant's pricing for *all* its products (including the ones Ms. Vizcarra purchased) over the entire course of the statute of limitations period (including the 90 days preceding Ms. Vizcarra's purchases.) FAC ¶¶31-33; *see* Franzini Decl. And she alleges that this investigation showed that Defendant *always* offered a coupon-based promotion entitling consumers to least 20% off, on *all* of its products sitewide and storewide throughout the entire statute of limitations period, meaning that the advertised "regular" price was higher than the true "regular" price for *all* of Defendant's products during the entire relevant timeframe. *Id.* So, Ms. Vizcarra's investigation specifically covered the products Ms. Vizcarra purchased, and specifically covered the timeframe leading up to her purchases, including the preceding 90 days.

To be sure—because Defendant's permanent discounts apply sitewide and storewide, to all products including the ones Ms. Vizcarra purchased, throughout the entire statute of limitations period—there was no need for Ms. Vizcarra to individually track the specific items Ms. Vizcarra

purchased. So, Ms. Vizcarra did not engage in this unnecessary exercise. But Defendant cites no law or logic suggesting that Ms. Vizcarra would need to track those specific items individually even though she has compelling storewide and sitewide evidence establishing what she needs to allege to state a claim, namely that the prices for those items were below the advertised "regular" prices during the relevant timeframe. And courts have found far less compelling evidence to be sufficient at this stage. *See, e.g., Real v. Y.M.I. Jeanswear, Inc.*, No. 17-cv-870-JGB (DTBx), 2017 U.S. Dist. LEXIS 237643, at *11-13 (C.D. Cal. Sep. 1, 2017) (finding sufficient an investigation that tracked the prices of 10 items, none of which the plaintiff had purchase, over a year after plaintiff made her purchases).

## V.    The economic loss rule does not bar Ms. Vizcarra's intentional misrepresentation claims.

Defendant contends that the economic loss rule bars Ms. Vizcarra's intentional misrepresentation claims.[2] Mot. 15-16. Defendant is wrong.

As this Court has recognized, "[p]roperly pled, claims for fraudulent inducement fall under their own 'well-recognized exception to the economic loss rule.'" *See, e.g., White v. FCA US LLC*, No. 22-cv-00954-BLF, 2022 U.S. Dist. LEXIS 146604, at *13 (N.D. Cal. Aug. 16, 2022) (Freeman, J.). This is because "[f]raudulently inducing someone to enter into a contract is a tortious injury apart from any injury that may later arise under the contract itself." *Garcia v. GM LLC*, No. 18-cv-01893-JLS-KES, 2019 U.S. Dist. LEXIS 8678, at *14 (C.D. Cal. Jan. 17, 2019), citing *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004). So, "[w]hen one party commits a fraud during the contract formation or performance, the injured party may recover in contract *and tort*." *Robinson*, 34 Cal. 4th at 990, quoting *Harris v. Atl. Richfield Co.*, 14 Cal. App. 4th 70, 78 (1993).

Here, Ms. Vizcarra properly pleads fraudulent inducement: she alleges that Defendant made intentional misrepresentations that fraudulently induced her to purchase goods she otherwise would

---

[2] Ms. Vizcarra recognizes that under the approach the Court adopted in *Freund v. HP, Inc.*, No. 22-cv-03794-BLF, 2023 U.S. Dist. LEXIS 7187, at *11-12 (N.D. Cal. Jan. 13, 2023), her negligent misrepresentation claims would be barred by the economic loss rule. Accordingly, Ms. Vizcarra withdraws her negligent misrepresentation claims.

not have purchased. *See* §II above (summarizing misrepresentations); FAC ¶56 (alleging that Ms. Vizcarra "would not have made these purchases if she had known that the Products were not discounted as advertised, and that she was not receiving the advertised discount"). As a result, she suffered a tortious injury (buying the products from Defendant in the first place) that is apart from any injury that later arose under the contract itself as a result of Defendant's non-performance. The Court should therefore follow the numerous cases that have found that the economic loss rule does not bar intentional misrepresentation claims in indistinguishable situations, and deny Defendant's motion as to the economic loss rule. *See, e.g., Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1282-83 (C.D. Cal. 2022) (holding that the economic loss rule did not apply to intentional misrepresentation claims) ("Because Plaintiff pled here that he would not have bought the Medication but for the alleged misrepresentations, his claims also include an element of fraudulent inducement into a contract such that they are appropriate under tort law."); *Digiacinto v. RB Health (US) LLC*, No. 22-cv-04690-DMR, 2023 U.S. Dist. LEXIS 63691, at *29-31 (N.D. Cal. Apr. 11, 2023) (same); *Spintouch, Inc. v. Outform, Inc.*, No. 21-cv-00840-DOC-ADS, 2021 U.S. Dist. LEXIS 246060, at *9 (C.D. Cal. Nov. 8, 2021) (same); *Arabian v. Organic Candy Factory*, 2018 U.S. Dist. LEXIS 45833, at *21-22 (C.D. Cal. Mar. 19, 2018) (same).

## VI.    Ms. Vizcarra states claims for breach of contract and breach of warranty.

Ms. Vizcarra alleges that Defendant made a contractual promise "to provide Products having a particular listed regular price and market value, and to provide that Product at the discounted price advertised on the website," and represented that its products had that listed regular price and market value. FAC ¶58. She alleges that "[t]he regular price and market value of the items Ms. Vizcarra would receive, and the amount of the discount she would be provided off the regular price of those items, were specific and material terms of the contract." *Id.* ¶61. And she alleges that Defendant breached those material terms "to provide Ms. Vizcarra with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised." *Id.* ¶63.

These allegations state a claim for breach of contract. *See, e.g., Munning v. Gap, Inc.*, No. 16-cv-03804-TEH, 2016 U.S. Dist. LEXIS 149886, at *21-23 (N.D. Cal. Oct. 28, 2016) (allowing

breach of contract claims to proceed on identical allegations); *Freeman v. Indochino Apparel*, Inc., 443 F. Supp. 3d 1107, 1113 (N.D. Cal. 2020) (same). They also state a claim for breach of warranty. *Munning v. Gap, Inc.*, No. 16-cv-03804-TEH, 2016 U.S. Dist. LEXIS 149886, at *25-26 (N.D. Cal. Oct. 28, 2016) (allowing breach of warranty claims to proceed where the seller warranted "that the products were being sold at a discounted price," when in fact they were not).

Defendant asserts that Ms. Vizcarra received "items discounted from their current, 'regular,' and undiscounted prices as a result of her use of a coupon and discount code." Mot. 16. Defendant also repeats its arguments that Ms. Vizcarra's investigation into the prevailing market prices was inadequate. Defendant claims that, as a result, Ms. Vizcarra "does not allege any breach." Mot. 16. As explained above, however, Ms. Vizcarra plausibly alleges that Defendant's true regular prices are at least 20% less than the "regular" prices that Defendant lists. *See* §§II, IV(A). So Defendant's contention that Ms. Vizcarra received "items discounted from their … regular … prices" is contrary to pleaded facts. And as to the prevailing prices and market value of those products, as explained above, Ms. Vizcarra's allegations satisfy even the more demanding standard under Rule 9(b) that applies to her fraud claims. *See* §IV(B). So they certainly satisfy the lower Rule 8 standard that applies to her breach of contract and breach of warranty claims.

Defendant also asserts that Ms. Vizcarra's breach of warranty clams fail because she "does not plead with particularity what the 'exact' warranty terms were" and because "a breach of warranty cannot be premised upon allegations regarding the perceived 'value' of the goods." Mot. 17. "However, [Ms. Vizcarra's] complaint specifically identifies that the express warranty was the description provided by the Defendant[] that the products were being sold at a discounted price." *Munning v. Gap, Inc.*, No. 16-cv-03804-TEH, 2016 U.S. Dist. LEXIS 149886, at *25 (N.D. Cal. Oct. 28, 2016) (rejecting similar argument). And as several cases have held rejecting this precise argument, "an advertised discounted price can constitute an express warranty." *Id.* (collecting cases).

**VII.    Ms. Vizcarra states a claim for unjust enrichment.**

Under controlling law, a plaintiff "may assert an unjust enrichment claim in the alternative to [a] breach of contract claim." *Rabin v. Google LLC*, No. 22-cv-04547-BLF, 2023 U.S. Dist. LEXIS

104694, at *35-36 (N.D. Cal. June 15, 2023). This is what Ms. Vizcarra does here. FAC ¶24 ("Plaintiff seeks damages and, in the alternative, restitution.").

Defendant asserts that Ms. Vizcarra's unjust enrichment claim should be dismissed because she "fails to deny [the] existence or enforceability [of her contract with Defendant] in the FAC, or plead facts suggesting that the contract may be unenforceable or invalid." Mot. 18. This is not true. As explained above, Ms. Vizcarra plausibly alleges that Defendant fraudulently induced her to make her purchases. *See* §V. Accordingly, she pleads facts suggesting that the contract is voidable and therefore, unenforceable. *Plaksin v. Newsight Reality*, No. 19-cv-00458-RGK-SS, 2019 U.S. Dist. LEXIS 168063, at *8 (C.D. Cal. Apr. 30, 2019) ("A contract is voidable for fraudulent inducement 'when the promisor knows what he is signing but his consent is induced by fraud.'").[3]

## VIII.  Ms. Vizcarra can seek CLRA damages.

The CLRA states that "[t]hirty days or more prior to the commencement of an action for damages," a consumer must "[n]otify the person alleged to have employed or committed" unlawful acts and "[d]emand that the person correct[s]" their violations. Cal. Civ. Code § 1782(a). But, "[a]n action for injunctive relief … may be commenced without compliance" with the notice requirement. Cal. Civ. Code § 1782(d). And if it is, "[n]ot less than 30 days after the commencement of an action for injunctive relief," a consumer suing under the CLRA "may amend his or her complaint without leave of court to include a request for damages." *Id.*

This is precisely what happened here. "In her initial Complaint, which was filed less than 30 days after the CLRA demand letter was sent, [Ms. Vizcarra] only sought injunctive relief, and did not seek damages, on her CLRA claim. But she stated that 'If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA.'" FAC ¶101; *see* Dkt. 1 (Initial Complaint) ¶98 (seeking only "injunctive relief" on her CLRA claim).

---

[3] Defendant also claims that Plaintiff's unjust enrichment claim should be dismissed for all of the same reasons her fraud-based claims should be dismissed. Mot. 17. These reasons are already rebutted above.

1      Then, several months later—and more than 30 days after she served a CLRA notice letter on

2      Defendant—Ms. Vizcarra did what the CLRA specifically says she can do: she "amend[ed] … her

3      complaint … to include a request for [CLRA] damages." Cal. Civ. Code § 1782(d); *see* FAC ¶101

4      ("Now, 30 days have passed and Defendant has not corrected the problem for Plaintiff and for each

5      member of the California Subclass. Accordingly, Plaintiff seeks all monetary and equitable relief

6      available under the CLRA…"). So, in short, Ms. Vizcarra did exactly what she was supposed to do to

7      seek CLRA damages.

8      Defendant asserts that Initial Complaint sought CLRA damages. Mot. 18. This assertion is

9      false. Initial Complaint ¶98 (seeking only "injunctive relief" on her CLRA claim). Defendant cites

10     paragraph 96 of the Initial Complaint. Mot. 18. What this paragraph says is "Defendant's

11     misrepresentations were a substantial factor and proximate cause in causing damages and losses to

12     Plaintiff and the subclass." Initial Complaint ¶96. This is a factual statement about the effects of

13     Defendant's conduct (and one required to establish standing)—not a request for CLRA damages. (By

14     analogy, pointing out that as a factual matter the defendant's conduct resulted in the plaintiff having

15     to hire an attorney is not the same as seeking attorneys' fees from the defendant). So, Defendant's

16     argument is based on a mischaracterization of the Initial Complaint.

17     In any event, the "CLRA's notice requirement is not jurisdictional," and so, if a party fails to

18     comply, they are granted leave to provide notice and then amend 30 days later. *Herron v. Best Buy*

19     *Stores, Ltd. P'ship*, 2014 U.S. Dist. LEXIS 14000, at *12 (E.D. Cal. Feb. 3, 2014); *see Wehlage v.*

20     *EmpRes Healthcare Inc.*, 2012 U.S. Dist. LEXIS 14157, at *24 (N.D. Cal. Feb. 6, 2012) ("Plaintiffs'

21     damages claims are dismissed without prejudice and they are granted leave to amend to include such

22     claims once they can show they have complied with the notice requirements"). Here, it is undisputed

23     that Ms. Vizcarra has already provided notice, and then amended the complaint more than 30 days

24     later. So Defendant's argument fails regardless of what the Initial Complaint says.

25     **IX.    The Court should not strike the class allegations.**

26     "There is a split in this District as to whether a motion to strike class action allegations may

27     be entertained at the motion to dismiss stage. Several judges have held that they may not be. Other

28     judges have held that a motion to strike class action allegations may be brought (but granted only

1  rarely) at the motion to dismiss stage. Even these judges, however, have applied a very strict standard

2  to motions to strike class allegations on the pleadings. Only if the court is convinced that any

3  questions of law are clear and not in dispute, and that under no set of circumstances could the claim

4  or defense succeed may the allegations be stricken." *Ogola v. Chevron Corp.*, No. 14-cv-173-SC,

5  2014 U.S. Dist. LEXIS 117397, at *5-8 (N.D. Cal. Aug. 21, 2014) (internal citations omitted and

6  cleaned up) (collecting cases).

7      Here, Defendant argues that Ms. Vizcarra's class claims should be stricken because her

8  proposed classes include consumers who "did not rely on and were not deceived by any alleged

9  advertising" and so were not injured, namely those who "paid the current, full price because they did

10 not use a promotional code or coupon." Mot. 19. Defendant claims that this renders the proposed

11 classes overly broad and not certifiable. *Id.*

12     As explained above, however, Defendant's extensive advertising makes its coupon-based

13 discounts impossible to miss. And it would make no sense for a consumer who knows that they can

14 get a discount by entering a coupon code to choose to pay full price anyway. So it is unlikely that

15 there is more than a *de minimis* number of consumers in the proposed classes who paid full price,

16 even though a coupon-based discount was available at the time of their purchase. And anyone who

17 did likely thought that the discount would apply automatically, and did not realize that they were

18 charged more than the advertised discount prices, and so was deceived in precisely the same way as

19 Ms. Vizcarra: they thought they were getting a deal, but did not.

20     Plus, in any event, as the *en banc* Ninth Circuit recently confirmed, Rule 23 allows

21 "certification of a class that potentially includes more than a de minimis number of uninjured class

22 member." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th

23 Cir. 2022). Only when "a class is defined so broadly as to include a great number of members who

24 for some reason could not have been harmed by the defendant's allegedly unlawful conduct" is a

25 class defined too broadly to permit certification. *Id.* (internal quotations omitted). So the existence of

26 *some* uninjured class members in the proposed class would not establish that the proposed classes

27

28

1  cannot be certified. And at this stage, Defendant cannot show that "a great number of members" of

2  the proposed classes are uninjured.[4]

3      In short, without a developed record, Defendant cannot carry its burden of showing that

4  "under no set of circumstances" could the proposed classes be certified. *Ogola*, 2014 U.S. Dist.

5  LEXIS 117397, at *7. And if discovery shows that the class definition should be narrowed to include

6  only those class members who actually used a coupon or coupon code and so necessarily were

7  exposed to and deceived by Defendant's ads, "Plaintiff (or the Court) can modify the class definition

8  at class certification stage." *Taylor v. Shutterfly, Inc*., No. 18-cv-00266-BLF, 2020 U.S. Dist. LEXIS

9  47931, at *13 (N.D. Cal. Mar. 19, 2020) (Freeman, J.).

10  **X.     The Court should not dismiss the nationwide class claims.**

11      Defendant argues that the nationwide class claims should be dismissed because Ms. Vizcarra

12  is "a California resident who made her purchases in California" and so "does not have standing to

13  assert claims under the laws of any other states." Mot. 20. But "*Mazza* [the Ninth Circuit's key

14  decision on this topic] explicitly left open the possibility that a court could certify subclasses grouped

15  around 'materially different bodies of state law'" i.e., classes that themselves only contain similar

16  laws. *Allen v. Hylands, Inc*., 2012 U.S. Dist. LEXIS 61606, at *5 (C.D. Cal. May 2, 2012) (quoting

17  *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 594 (9th Cir. 2012)); *Schwartz v. Lights of Am*., 2012

18  U.S. Dist. LEXIS 142789, at *30 n.6 (C.D. Cal. Aug. 31, 2012) (a plaintiff "can seek to certify

19  subclasses … for groups of states with materially similar consumer protection laws."). And courts

20  can and do certify such multi-state or nationwide classes. *See, e.g., Allen v. ConAgra Foods, Inc*., 331

21  F.R.D. 641, 666 (N.D. Cal. 2019) (certifying multi-state subclasses); *Mednick v. Precor, Inc*., 320

22  F.R.D. 140, 157 (N.D. Ill. 2017) (same). Plus, "as *Mazza* demonstrates, a detailed and fact-intensive

23  inquiry is necessary to determine the substantive law applicable to class members' claims" in the first

24  place. *So v. HP, Inc*., No. 22-cv-02327-BLF, 2022 U.S. Dist. LEXIS 206470, at *21 (N.D. Cal. Nov.

25  14, 2022) (Freeman, J.). So, Defendant cannot obtain dismissal of the class claims without a careful

26  _____

27      [4] Defendant asserts that the inclusion of individuals who did not use coupon codes also

28  renders the proposed classes "non-ascertainable," but does not explain this assertion.

1   analysis of whether California law applies, and whether the laws of other states are materially

2   different from California's. *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012)

3   (defendant, as the party with the burden, may not "substitute *Mazza*'s holding in lieu of Defendants'

4   own careful analysis of choice-of-law rules as applied to this particular case."); *Clay v. Cytosport,*

5   *Inc.*, 2018 U.S. Dist. LEXIS 153124, at *45 (S.D. Cal. Sep. 7, 2018) ("Defendant does not offer an

6   analysis of its own, but relies entirely on the holding in *Mazza*"); *Allen v. Hyland's Inc.*, 300 F.R.D.

7   643, 658 (C.D. Cal. 2014) (defendants "fail[ed] to provide any case-specific analysis" of any of the

8   three governmental-interest elements); *cf. Phan v. Sargento Foods, Inc.*, 2021 U.S. Dist. LEXIS

9   103629, at *29 (N.D. Cal. June 2, 2021) (unlike Defendant, the defendant "identified differences in

10  the consumer protection laws"). And Defendant makes no attempt to perform any such analysis here.

11  So Defendant cannot obtain dismissal of the nationwide class claims at this stage.

12          Defendant cites to the Court's decision in *So v. HP, Inc.*, 2022 U.S. Dist. LEXIS 206470, at

13  *19 (N.D. Cal. Nov. 14, 2022) (Freeman, J.). In *So*, however, the Court did not dismiss nationwide

14  class claims. Quite the opposite, the Court expressly declined to do so, concluding that "the Court

15  will not decide this issue at this stage of the case." *Id*. The Court should follow this same approach

16  here.

17  **XI.    Conclusion.**

18          Defendant's motion should be denied.

19

20  Dated: July 11, 2023                          Respectfully submitted,

21                                                By: /s/ *Simon Franzini*
                                                  Simon Franzini (Cal. Bar No. 287631)
22                                                simon@dovel.com
                                                  Grace Bennett (Cal. Bar No. 345948)
23                                                grace@dovel.com
                                                  DOVEL & LUNER, LLP
24                                                201 Santa Monica Blvd., Suite 600
                                                  Santa Monica, California 90401
25                                                Telephone: (310) 656-7066
                                                  Facsimile: (310) 656-7069
26

27

28                                                *Attorneys for Plaintiff*