UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEA VIZCARRA,<br><br>             Plaintiff,<br><br>    v.<br><br>MICHAELS STORES, INC.,<br><br>             Defendant. | Case No. 23-cv-00468-PCP<br><br>**ORDER DENYING IN PART MOTION TO DISMISS AND DENYING MOTION TO STRIKE**<br><br>Re: Dkt. No. 26, 34 |

Plaintiff Nea Vizcarra alleges that defendant Michaels Stores, Inc. deceptively advertises its products as discounted when in fact they are always available for at least 20% less than the purported "regular" price. She brings several claims on behalf of herself and a proposed class. Michaels moves to dismiss Ms. Vizcarra's complaint under Federal Rule of Civil Procedure 12(b)(6) and to strike her class allegations under Rule 12(f). For the reasons set forth below, Michaels' motion to dismiss is denied as to all of Ms. Vizcarra's claims except for her unjust enrichment claim. The motion to strike is also denied. Michaels separately requests judicial notice of several court documents and webpages. That request is granted. Ms. Vizcarra is granted leave to amend and may file a revised complaint by February 2, 2024.

**I.    Background**

The following facts from Ms. Vizcarra's amended complaint are accepted as true for the purposes of evaluating Michaels' Rule 12(b)(6) motion to dismiss.

Michaels sells arts and crafts and home decor products on its website and in its stores. On Michaels.com, Michaels' entire inventory is always available at a discount of at least 20% off of the "regular" listed prices. Michaels prominently advertises these discounts on its homepage, search results pages, and next to the "regular" list price on each item's individual page. For

1  example, on January 31, 2023, a prominent red banner at the top of the Michaels.com homepage
2  advertised "20% off regular price purchases." On search and product pages that month, the text
3  "Save 20% with code 22MADEBYYOU" appeared in red text immediately below list prices. Some of
4  the discount codes are time limited. But Ms. Vizcarra alleges that at least one sitewide discount
5  code offering at least 20% off of all merchandise is *always* offered. She has included screenshots
6  of Michaels' website from every month between January 2021 and February 2023 showing that
7  20% discounts were available each time. Similar discounts are offered in stores via coupons that
8  are available both online and in stores. The upshot is that Michaels' products are always
9  available—in store and online—for at least 20% off the prices Michaels characterizes as "regular."

10  Ms. Vizcarra purchased several items from Michaels.com on November 28, 2022. She
11  used a sitewide discount code advertising "40% off all regular price purchases," and also
12  purchased several items that were individually on sale for steeper discounts. On January 19, 2023,
13  she purchased more items, this time from a Michaels store in Salinas, California. At the time,
14  Michaels was advertising "20% off all regular price purchases" with a coupon that was "valid
15  through January 28, 2023." Some of the items she purchased in-store were on sale for even greater
16  discounts. Her receipt indicated she saved $11.65. Ms. Vizcarra says that in purchasing the
17  discounted items, she understood that she was purchasing items that regularly (including before
18  the advertised promotion) retailed at the published "regular" price, that this published price was
19  the market value of the products she was buying, and that she was receiving the items at a
20  comparatively reduced price that was not always available. She says she would not have made the
21  purchases if she had known that the products were not discounted as advertised.

22  Ms. Vizcarra brought this action on February 1, 2023 and filed an amended complaint on
23  May 3, 2023. She brings the action on behalf of a putative nationwide class of people who
24  "purchased one or more Michaels Products advertised at a discount on Defendant's website or in-
25  store," as well as on behalf of a similar California subclass. Michaels has moved to dismiss the
26  amended complaint. The Court held a hearing on Michaels' motion on November 9, 2023.

## II. Legal Standards

Under Rule 8, a complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief," with allegations that are "simple, concise, and direct." Rule 9(b) sets a higher standard for certain claims: A party "alleging fraud or mistake … must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The pleading must be "specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Rule 12(b)(6) governs dismissal for "failure to state a claim upon which relief can be granted." A complaint must "plausibly suggest" that the plaintiff is entitled to relief, meaning the pleaded "factual content … allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009).

Rule 12(f) allows the Court to "strike ... any redundant, immaterial, impertinent, or scandalous matter." A motion to strike is a drastic remedy. These motions are generally disfavored and not granted unless the moving party can clearly show that the challenged material could not possibly relate to the controversy and that allowing it to remain would cause significant prejudice. *See, e.g.*, *Lee v. City of San Jose*, No. 23-CV-00778-PCP, 2023 WL 7376823, at *2 (N.D. Cal. Nov. 8, 2023); *Digit. Verification Sys., LLC v. Foxit Software Inc.*, 21-CV-08529-YGR, 2022 WL 2800081 (N.D. Cal. Jan. 11, 2022); *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012); 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1382 (3d ed.) (collecting cases).

## III. Analysis

For the reasons set forth below, Michaels' motion to dismiss is denied as to all of Ms. Vizcarra's claims except her unjust enrichment claim. The motion to strike the class allegations is also denied. Michaels' separate request for judicial notice is granted.

3

**A.     Motion To Dismiss**

      **1.     Ms. Vizcarra States a Former Price Advertising Claim Under the FAL.**

Ms. Vizcarra's first cause of action includes a claim under Section 17501 of the California False Advertising Law (FAL). Section 17501 governs the practice of "former price" advertising and provides: "No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

The upshot of Ms. Vizcarra's allegations is that in stores and online, all Michaels products are always available for two prices: the regular list price and a discounted price that is always at least 20% lower. Ms. Vizcarra alleges that the coupon code needed to secure the 20% discount is widely and prominently advertised, including on the Michaels.com homepage, search results pages, and individual product pages, as well as in stores. A customer that does not use the coupon will not receive the sitewide 20% discount. The screenshot included in Ms. Vizcarra's complaint and discussed by Michaels in its motion to dismiss shows an example of how this advertising is typically presented:

[screenshot showing: "20% off regular price purchases with code 22MADEBYYOU | FREE shipping on orders $49+"; "Michaels REWARDS | EARN $10 IN REWARDS WHEN YOU SPEND $40+ | VALID SUN 10/16 – SAT 10/22/22"; "HOME / FLORAL / DRIED FLORAL / GREEN EUCALYPTUS BUNCH BY ASHLAND®, 16OZ. — Green Eucalyptus Bunch by Ashland®, 16oz. Item # 10322552 ★★★★ 3.8 (181) Write A Review — $19.99 Pay over time on orders $50+ with affirm. Learn more. Save 20% with code 22MADEBYYOU See Details"]

Dkt. No. 26, at 11; Dkt. No. 34, at 15. This advertising and pricing mechanism essentially presents a customer with two choices. Option 1: Add the item to your cart, check out, and pay $19.99. Option 2: Add the item to your cart, enter the prominently displayed discount code, check out, and pay $15.99 (i.e., 20% off).

4

Michaels is correct that in this example, $19.99 is a current price of a 16-ounce Green Eucalyptus Bunch (one of two current prices, to be precise). Based on this, Michaels contends that it "advertises current—not former—prices" and that its "alleged discounting … is not subject to Section 17501." Dkt. No. 34, at 16. But Michaels makes an important logical leap—namely, that a current price cannot also be a former price.

On its surface this argument makes some intuitive sense; advertisements commonly display a former price in order to demonstrate that the current price is lower. But it is not hard to imagine circumstances where a merchant might instead want to emphasize the fact that former and current prices are the same: perhaps to emphasize that prices have stayed flat despite inflation, for example, or to suggest that items never go on sale and customers therefore might as well buy now rather than wait for a deal. Nothing in the text of the statute suggests that a former price must be *different* from a current price, and Michaels has not provided authority for that proposition.

Here, if Michaels had listed $19.99 as the current price of a eucalyptus bunch but had included a red label below stating, "This item was formerly only available at the regular price but is now also available at a 20% discount by entering a coupon code," that would clearly suggest that the listed current price was also being presented as the former price of the product. The essence of Ms. Vizcarra's complaint is that, in context, Michaels' pricing creates exactly this impression, albeit less explicitly. The question here is not whether Michaels' list prices are current prices (they clearly are), but rather whether it has presented its "regular" prices in a way that suggests they are *also* former prices.[1]

It is clear that Michaels' advertising does not explicitly identify its "regular" or pre-discount current prices as "former" prices. But Section 17501 does not require explicit labelling.

---

[1] Importantly, the question presented is not whether *all* discount codes or coupons—which give customers the opportunity to choose between a higher current price and a lower current price—constitute former price advertising within the scope of Section 17501. The question is simply whether it is possible to offer a discount code or coupon scheme in a way that presents the higher current price as a former price—and in this case, whether Michaels has done so. Michaels speculates that if its scheme falls within Section 17501, "then the availability of a grocery store club member to obtain a discount through entry of his or her club identifier would create a 'former' price." Dkt. No. 39, at 11. But that conclusion does not follow. Coupons offered in exchange for receiving something from a consumer, like sharing personal information or repeat purchases, are clearly distinguishable.

5

"A reasonable consumer does not need language such as, 'Formerly $9.99, Now 40% Off $9.99,' or, '40% Off the Former Price of $9.99,' to reasonably understand '40% off' to mean 40% off the former price of the product." *Knapp v. Art.com, Inc.*, No. 16-CV-00768-WHO, 2016 WL 3268995, at *4 (N.D. Cal. June 15, 2016). Courts have construed strikethrough prices as representing former prices despite "[t]he lack of specific words indicating the regular price." *Munning v. Gap, Inc.*, No. 16-CV-03804-TEH, 2016 WL 6393550, at *4 (N.D. Cal. Oct. 28, 2016). And in *Knapp*, the Court held that a perpetual coupon pricing scheme very similar to Michaels' could constitute former price advertising within the meaning of Section 17501:

> Art.com asserts that section 17501 does not apply because Art.com's sales require consumers to enter a coupon code to obtain the advertised sale price, meaning that its sales merely compare "two current prices"—i.e., the coupon price and the non-coupon price—not a former non-sale price and a current sale price. I am not convinced. Knapp has plausibly alleged that the "40% off" language he viewed objectively qualifies as former price advertising within the meaning of section 17501, and that he subjectively interpreted the language as advertising a discount from Art.com's former prices. Against this backdrop, it is not clear why it matters that he was required to enter a coupon code to obtain the advertised 40 percent discount. As described in the [complaint], the requirement that a consumer enter a coupon code to obtain the advertised discount is merely a routine, procedural step in the purchase transaction and is not material to whether Art.com's advertising constitutes former price advertising under section 17501.
>
> Moreover, I am skeptical that section 17501 cannot be applied to a comparison between a current coupon price and a current non-coupon price, merely because both prices are currently available to consumers. Art.com cites no on-point authority to support its position that a former price under section 17501 must be one that is not currently offered, and thus cannot be a currently offered "regular" or "non-sale" price.

*Knapp*, 2016 WL 3268995, at *5 & n.4 (cleaned up).

This analysis is equally applicable here. Ms. Vizcarra's allegations are sufficient to suggest that Michaels' advertising could convey to a reasonable consumer that the non-discounted list price is a "former" price under the meaning of Section 17501. At the pleading stage, it is clearly plausible that language like "20% off all regular price purchases" or even "save 20%" could

6

1    suggest to a reasonable consumer that that the listed non-discount price is the price a customer

2    would previously have had to pay and that comparable discounts are not always available. And as

3    the Court in *Knapp* convincingly explained, there is no reason why the fact that the higher price is

4    also currently offered means it cannot also be understood as a former price.

5          Michaels does not dispute that the allegations in Ms. Vizcarra's complaint are sufficient to

6    establish a Section 17501 violation under the logic of *Knapp*. But Michaels argues that *Knapp* is

7    an outlier that has been superseded by an intervening California appellate court decision, *People v.*

8    *Superior Court (J.C. Penney Corp.)*, 34 Cal. App. 5th 376 (2019). In particular, Michaels points to

9    two aspects of the *Knapp* decision it says conflict with *J.C. Penney* (a decision which is persuasive

10   but not necessarily binding authority as to the content of California law).

11         First, according to Michaels, "*Knapp* ruled a plaintiff need not identify prices charged by

12   other retailers to establish a defendant's prices are higher than the 'prevailing market price' so

13   long as a plaintiff alleges that a defendant sells at a percentage lower than 'prevailing market

14   prices.' But *J.C. Penney* and subsequent cases make clear that an item's 'prevailing market price'

15   is determined by the actual sales prices of 'similar goods' and the 'same goods' on the 'open local

16   market.'" Dkt. No. 39, at 10. Michaels is correct that *J.C. Penney* addresses the definition of

17   "prevailing market price" under Section 17501. *See* 34 Cal. App. 5th at 411. But *Knapp* does not

18   conflict with *J.C. Penney* because *Knapp* is not about the definition of "prevailing market price."

19   Instead, *Knapp* addresses what a plaintiff must plead in order to establish that the advertised

20   former price was not the prevailing market price. *Knapp*'s holding that a plaintiff "does not need

21   to identify prices charged by other retailers to plausibly establish that … advertised former prices

22   are higher than prevailing market prices," 2016 WL 3268995, at *5, is entirely consistent with a

23   definition of "prevailing market price" that is based on the "common or predominant price among

24   the sellers in the market where the item is advertised," *J.C. Penney*, 34 Cal. App. 5th at 412. In

25   other words, while a plaintiff must eventually determine the prices charged by other sellers in the

26   market where an item is advertised in order to prove the prevailing market price, they need not

27   identify the actual prices charged by other retailers in order to state a claim.

28

Michaels also argues that the California court in *J.C. Penney* "caution[ed] that the statute is to be strictly construed due to its imposition on protected speech." Dkt. No. 39, at 10. But *J.C. Penney* reversed the lower court's determination that Section 17501 is unconstitutionally vague and declined the real parties' invitation to construe Section 17501 narrowly "as targeting only nonprotected commercial speech." 34 Cal. App. 5th at 396. Instead, the court "conclude[d] that the prohibition, properly construed, bans a considerable amount of commercial speech protected under the First Amendment and the free speech provision of the California Constitution." *Id.* at 397–98. The court concluded that the real parties had failed to show that this regulation was unjustified and held that their free speech challenge therefore failed (at least at the demurrer stage). *Id.* at 398–99.

Here, Ms. Vizcarra has plausibly alleged that Michaels presents its pricing and discounts in a way that could suggest to a reasonable consumer that the "regular" (i.e., higher current price) is also a former price. The next question under Section 17501 is whether "the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement."

The complaint alleges that most products Michaels sells are "exclusive" or "private brand" products sold only by Michaels, but that it also sells at least some non-exclusive products.[2] Dkt. No. 26, at 22. In her complaint, Ms. Vizcarra alleges that all Michaels products—be they exclusive or non-exclusive—are always available for two prices. Drawing all reasonable inferences in her favor, the Court can presume that most consumers, when confronted with two prices including a lower price that can be obtained with negligible additional effort, will opt for the lower price. Ms.

---

[2] Michaels argues that the alleged private label or "exclusive" products are not actually exclusive because at least some of the products are also sold on marketplaces like Amazon.com and Walmart.com by third-party sellers. *See* Dkt. No. 34, at 21–22. The Court takes judicial notice of the existence and contents of the webpages Michaels has submitted which show certain Michaels private brand products for sale on Amazon.com and Walmart.com. But the existence of these listings does not refute Ms. Vizcarra's allegations that most of Michaels' products are exclusive private label products. Any product—exclusive or non-exclusive—can of course be re-sold on online marketplaces or elsewhere. Whether these disputed products are exclusive or non-exclusive products and how their prevailing market prices should be calculated are ultimately questions of fact. At the pleading stage the Court must take Ms. Vizcarra's allegations as true and draw all inferences in her favor. The screenshots Michaels has submitted do not necessarily contradict Ms. Vizcarra's allegations that most of Michaels' products are exclusive products and therefore do not alter the Court's conclusions.

8

Vizcarra's allegations are therefore sufficient to plausibly establish that the prevailing market price of products sold at Michaels is the lower, discounted price, while Michaels' advertising presents the higher non-discounted price as a former price. This is true even for any non-exclusive products, because the Court can infer for purposes of the present motion that Michaels would not continually sell products for prices at least 20% less than the market rates at which those products are offered elsewhere. *See also Knapp*, 2016 WL 3268995, at *5 ("Knapp does not need to identify prices charged by other retailers to plausibly establish that Art.com's advertised former prices are higher than prevailing market prices.").[3] Under Rule 8 and Rule 12(b)(6), these allegations are sufficient to state a violation of Section 17501.[4]

### 2. Ms. Vizcarra Adequately Pleads FAL, UCL, and CLRA Advertising Claims.

In addition to the Section 17501 claims discussed above, Ms. Vizcarra also claims in her first cause of action that Michaels has violated Section 17500 of the FAL. In her second cause of action, she seeks damages and an injunction under the California Consumer Legal Remedies Act (CLRA). And in her third cause of action, she claims that Michaels has violated the unlawful, deceptive, and unfair prongs of California's Unfair Competition Law (UCL). Michaels argues, and Ms. Vizcarra does not dispute, that these claims are subject to Rule 9(b).

Section 17500 of the FAL broadly prohibits knowingly or negligently making "untrue or misleading" statements in conjunction with the intentional sale of goods or services. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising" and any act prohibited by the FAL. Cal. Bus. & Prof. Code § 17200. The California Supreme Court has emphasized that "any violation of the false advertising law necessarily violates the UCL." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002)

---

[3] While there are different methods for determining the prevailing market price of exclusive and non-exclusive products, that distinction is of limited relevance at the pleading stage, when Ms. Vizcarra does not need to allege the actual prevailing market price but only plausibly allege that the purported former price was not the actual prevailing market price during the three preceding months.

[4] While some claims under the False Advertising Law may be subject to Rule 9(b)'s heightened pleading standard, claims under Section 17501 do not necessarily sound in fraud because advertising can be entirely truthful and still violate Section 17501.

(cleaned up). Finally, the CLRA prohibits a wide range of "unfair methods of competition and unfair or deceptive acts or practices," including:

- "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have," Cal. Civ. Code § 1770(a)(5);
- "Advertising goods or services with intent not to sell them as advertised," *id.* § 1770(a)(9); and
- "Making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions," *id.* § 1770(a)(13).

As its name suggests, the CLRA authorizes consumers harmed by prohibited conduct to bring an action for damages and injunctive relief, provided they first comply with certain notice requirements when seeking damages. Cal. Civ. Code §§ 1780, 1782.

Claims under the FAL, UCL, and CLRA "are governed by the 'reasonable consumer' test." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Importantly, the UCL and FAL "prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. Thus, to state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Kasky*, 27 Cal. 4th at 951. "California courts … have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938. The question is ultimately whether a plaintiff "could plausibly prove that a reasonable consumer would be deceived." *Id.* at 940.

Here, Ms. Vizcarra has alleged facts that could plausibly establish that Michaels' advertising is false, misleading, or capable of deceiving or confusing the public. The essence of her allegations, described in more detail above, is that Michaels' advertised sales, discounts, and coupons are not as good as they might at first appear because its products are always on sale and customers never have to pay the listed "regular" price. Michaels counters that the alleged

advertisements cannot be misleading because, "while discounts may be *available*, that does not mean that all consumers are aware of them or undertake the required affirmative steps to take advantage of them," and that as a result, the allegation that coupons or discounts are always available "does not mean that the products are 'never' offered at the 'regular' or 'prevailing market price.'" Dkt. No. 34, at 18. That may be the case, but even advertisements which are technically true can still be misleading, deceptive, or confusing and thus violate the FAL. Ms. Vizcarra's allegations plausibly suggest that this could be true, and they therefore suffice at the pleading stage. Whether reasonable consumers are actually likely to be deceived by Michaels' advertising is a question of fact that must be resolved at a later stage.

Ms. Vizcarra's UCL claims are closely related to her FAL claims and are also therefore sufficient. The deceptive advertising prong of the UCL uses the same "reasonable consumer" test as the FAL (which it also explicitly incorporates), and Ms. Vizcarra's UCL deception claim therefore suffices for the same reason. The adequately pleaded FAL violation also serves as a sufficient predicate for a violation of the unlawful prong of the UCL. Finally, while there appears to be some variation among California courts over what test applies to consumer claims under the unfair prong of the UCL, the hard questions arise when conduct that is not otherwise proscribed is nevertheless alleged to be unfair. Here, where the factual allegations are sufficient to plausibly allege violations of the FAL and other prongs of the UCL, those same allegations also sufficiently state an unfairness prong claim under the UCL, including under the more stringent test that "requires the allegedly unfair business practice be 'tethered' to a legislatively declared policy." *See Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224, 1239 (Cal. Ct. App. 1st. Dist. 2007).

Michaels also argues that even if Ms. Vizcarra's claims satisfy Rule 8, her fraud-based claims are insufficiently pleaded under Rule 9(b). In its reply brief, Michaels focuses on two purported deficiencies. First, Michaels argues that Ms. Vizcarra has failed to plead "investigatory facts" regarding the prevailing market prices *at other retailers* for the products alleged to be non-exclusive, as well as for the allegedly exclusive products. Dkt. No. 39, at 12–14. However, as Ms. Vizcarra points out, only her Section 17501 claims depend on the prevailing market price of the

products at issue. *See* Dkt. No. 38, at 14. Those claims are adequately pleaded for the reasons described above. The non-Section 17501 FAL claims, as well as the UCL and CLRA claims, do not necessarily depend on what prices other retailers charge for the products Michaels sells. Ms. Vizcarra therefore does not need to allege pricing at other retailers in order to adequately state a claim that Michaels' own advertising is false, misleading, deceptive, or confusing.

Michaels also argues that Rule 9(b) requires Ms. Vizcarra to allege that she investigated the pricing history *at Michaels* for each of the specific items she purchased. If Ms. Vizcarra's complaint had asserted that advertised discounts specific to individual products were false or misleading, then product-specific individualized investigation might be required. But Ms. Vizcarra alleges a *blanket* pricing practice in which always-available coupons offer a perpetual discount of at least 20% off the "regular" list prices of *all* items. Even under Rule 9(b), there is no reason to require Ms. Vizcarra to individually investigate and track the prices of every Michaels product (or at least the ones she purchased) when the investigation she has already conducted suggests that "site-wide discounts of at least 20% were always available" during a two-year timeframe. Dkt. No. 26, at 19–20. Assuming her allegations are true, as is required, then these discounts would clearly apply to all Michaels products during the investigated time period. This is more than "specific enough to give defendants notice of the particular misconduct" Ms. Vizcarra alleges and therefore suffices under Rule 9(b). *See Vess*, 317 F.3d at 1106.

Finally, Michaels argues that Ms. Vizcarra has not complied with the CLRA's notice requirements and that the CLRA damages claim must therefore be dismissed. The CLRA provides that a plaintiff may file an action for injunctive relief and, at least 30 days after filing that action and notifying the defendant of the alleged violation, amend their complaint to include a request for damages. *See* Cal. Civ. Code § 1782(a), (d). Here, Ms. Vizcarra sent a CLRA demand letter on January 25, 2023. On February 1, 2023, she filed her initial complaint in this action, which did not include a claim for damages under the CLRA. *See* Dkt. No. 1, at 18. In the complaint, Ms. Vizcarra stated: "If Defendant does not fully correct the problem for Plaintiff and for each member of the California Subclass within 30 days of receipt, Plaintiff and the California Subclass will seek all monetary relief allowed under the CLRA." *Id.* Then, on May 2, 2023, Ms. Vizcarra filed the

12

1  present amended complaint including a CLRA damages claim. Dkt. No. 26. Michaels faults Ms.
2  Vizcarra for "ma[king] no attempt to engage in settlement of her claim" and for waiting *more* than
3  the 30-day minimum to file her amended complaint, arguing that these actions do not "accord with
4  the purpose of the CLRA's notice requirements." Dkt. No. 39, at 18–19. But Michaels' arguments
5  have no basis in the statute, with which Ms. Vizcarra thoroughly complied. The CLRA damages
6  claims will not be dismissed.

In sum, Michaels' motion is denied as to the FAL, UCL, and CLRA claims asserted in Ms. Vizcarra's first three causes of action.

### 3. Ms. Vizcarra States a Claim for Intentional Misrepresentation.

Ms. Vizcarra's ninth cause of action is a claim for intentional misrepresentation. Michaels argues this claim should be dismissed under the economic loss doctrine, which holds that a plaintiff who suffered "purely economic loss due to disappointed expectations" may recover only in contract—not tort—unless the plaintiff "can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). But one class of contract cases where the California Supreme Court has recognized that tort damages are permitted is "where the contract was fraudulently induced." *Id.* at 989–90 (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 551–52 (1999)); *see also White v. FCA US LLC*, 22-cv-00954-BLF, 2022 WL 3370791, at *5 (N.D. Cal. Aug. 16, 2022) ("Properly pled, claims for fraudulent inducement fall under their own 'well-recognized exception to the economic loss rule.'").

Ms. Vizcarra argues that her claim is not subject to the economic loss rule because it is based in fraudulent inducement: She alleges that she would not have purchased Michaels' goods in the first place absent Michaels' alleged misrepresentations, and claims that having purchased the products at all is a separate tort injury distinct from her disappointed economic expectations regarding their monetary value. Because these allegations include an element of fraudulent inducement, they are not barred by the economic loss rule and are sufficient to state a claim for intentional misrepresentation.

Ms. Vizcarra's complaint also includes a claim for negligent misrepresentation that Ms. Vizcarra has now withdrawn. Dkt. No. 38, at 18 n.2. This claim is dismissed.

13

**4.      Ms. Vizcarra States Claims for Breach of Contract and Warranty.**

Ms. Vizcarra's fourth cause of action is for breach of contract. She claims that she and class members entered a contract with Michaels in which they would pay Michaels for the products, and Michaels in turn would provide products that had market values equal to the non-discounted list prices while providing a discount. Michaels argues that there was no breach because it provided products having the specified list price and provided the specified discount from that price. The parties clearly disagree over the terms of the purported contract, how Michaels' products should be valued, and whether Ms. Vizcarra and other customers received the discounts they were promised. But these are fact disputes. For purposes of Rule 12(b)(6), Ms. Vizcarra has stated a breach of contract claim: She alleges a specific agreement and says that she upheld her end while Michaels did not and that she was harmed as a result. That is enough.

Ms. Vizcarra's fifth cause of action is for breach of express warranty. Under California law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," as does "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313. Here, Ms. Vizcarra alleges that Michaels represented that its products had a market value equal to the regular non-discounted list price, and that this was part of the basis for the bargain. As with the contract claims, Michaels responds that there was no breach. Michaels also argues that Ms. Vizcarra has failed to specify the "exact" warranty terms at issue and does not identify any deficiencies in the quality of the products she purchased. But as required by the statute, Ms. Vizcarra has alleged a description of the goods (not only their price but also the promised discount) and claims that the description was part of the basis of the bargain. At the pleading stage, that suffices. *See Munning*, 2016 WL 6393550, at *8.

Ms. Vizcarra's sixth cause of action is for breach of implied warranty. Michaels' arguments regarding the sufficiency of that claim are the same as its arguments regarding the express warranty claim, and fail for the same reasons.

### 5. Ms. Vizcarra Does Not State a Claim for Unjust Enrichment.

Ms. Vizcarra's seventh cause of action is a claim for quasi-contract/unjust enrichment. In California, "there is not a standalone cause of action for 'unjust enrichment.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Rather, "unjust enrichment" and "restitution" can serve as "the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request," the return of which "is the remedy typically sought in a quasi-contract cause of action." *Id.*

In support of her quasi-contract claim, Ms. Vizcarra alleges that Michaels' "false and misleading advertising" caused her to purchase Michaels products and "pay a price premium," and that Michaels therefore "received a direct and unjust benefit" at her expense. Dkt. No. 26, at 40. It is unclear from the facts alleged in the complaint, however, how Michaels' use of price *discounts* resulted in payment of a price *premium* to Michaels by Ms. Vizcarra—which is a necessary element of her claim for restitution. Wrongful conduct does not provide a basis for restitution unless there is a benefit unjustly retained by the defendant at the plaintiff's expense. *See Weitzenkorn v. Lesser*, 40 Cal. 2d 778, 794 (1953) ("Quasi contractual recovery is based upon benefit accepted or derived for which the law implies an obligation to pay. 'Where no benefit is accepted or derived there is nothing from which such contract can be implied.'").

In any event, Ms. Vizcarra's existing complaint suffers from a more obvious problem. "An action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). At the pleading stage, this means that "a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020).[5] In her existing complaint, Ms. Vizcarra has not pleaded that the contract she alleges she had with Michaels is unenforceable or invalid or explained why the facts she has alleged could

---

[5] Ms. Vizcarra does not dispute that her claims for unjust enrichment and restitution are based on an implied-in-fact or quasi-contract.

15

1  render the contract unenforceable. For that reason, her quasi-contract/unjust enrichment claim is
2  dismissed with leave to amend.

3        **B.**      **Motion To Strike**

4        Michaels also moves to strike Ms. Vizcarra's class allegations under Rule 12(f), or
5  alternatively, to dismiss all non-California claims. The gist of Michaels' argument is that Ms.
6  Vizcarra's class claims are so overbroad that the asserted class is not certifiable and the class
7  allegations should therefore be stricken.

8        Rule 23 requires the Court to determine whether to certify a class at an "early" time, so the
9  Court is certain to consider these questions at some point soon. But Rule 12(f) only allows the
10 Court to strike material that is "redundant, immaterial, impertinent, or scandalous." Although the
11 Court recognizes there is some variance among district courts on this question, the Court concurs
12 with those that have concluded that "Rule 12(f) motions to strike are not the proper vehicle for
13 seeking dismissal of class allegations." *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No.
14 C-13-1803 EMC, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014) (collecting cases). Michaels
15 will have the opportunity to challenge class certification, but its motion to strike the class
16 allegations under Rule 12(f) at the pleading stage is denied.

17       Alternatively, Michaels asks for dismissal of the non-California claims because Ms.
18 Vizcarra does not have standing to assert state law claims on behalf of a nationwide class. Here,
19 none of Ms. Vizcarra's claims invoke the laws of states other than California. And whether
20 California law may be used on a class-wide basis will require a detailed choice of law analysis and
21 consideration of whether "the interests of other states … outweigh California's interest in having
22 its law applied." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). This, too, is a
23 question for class certification; the parties have not briefed these questions in detail and the Court
24 will not endeavor to untangle the potentially complicated choice of law questions at this early
25 stage. *See, e.g.*, *Urban v. Tesla*, _ F. Supp. 3d _, No. 22-cv-07703-PCP, 2023 WL 6796021, at *4
26 (N.D. Cal. Oct. 13, 2023). Accordingly, Michaels' motion to dismiss Ms. Vizcarra's nationwide
27 class claims is also denied.
28

16

### C. Request for Judicial Notice

Michaels has requested judicial notice of several court filings and fourteen webpages. The court filings are clearly noticeable under Federal Rule of Evidence 201(b) and the Court takes notice of these documents. The Court also takes notice of the webpages, as discussed in note 2 above.

## IV. Conclusion

Ms. Vizcarra's unjust enrichment claim is dismissed with leave to amend. Michaels' motion to dismiss is denied as to all other claims. The motion to strike is denied. The request for judicial notice is granted. An amended complaint, if any, is due February 2, 2024. If Ms. Vizcarra does not file an amended complaint by that date, Michaels' response to the existing complaint will be due February 23, 2024.

**IT IS SO ORDERED.**

Dated: January 5, 2024

P. Casey Pitts
United States District Judge