Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEA VIZCARRA, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff,*<br><br>v.<br><br>MICHAELS STORES, INC.,<br><br>   *Defendant.* | Case No. 5:23-cv-00468-PCP<br><br>**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>**Noticed Hearing Date:** May 15, 2025<br><br>Hon. P. Casey Pitts |

1

**Table of Contents**

2  I.  Facts. ...................................................................................................... 1

3      A.  Michaels sells its own "private and exclusive" brand of arts and crafts supplies .......... 1

4      B.  Michaels' coupon discounts. .............................................................. 1

5      C.  The coupon discounts were deceptive ............................................ 3

6      D.  Ms. Vizcarra was misled by the coupon discounts. ....................... 6

7  II.  Proposed class and subclasses ............................................................ 7

8  III.  The Rule 23(a) prerequisites are met. ............................................... 7

9      A.  The proposed classes and subclasses are sufficiently numerous. .......... 7

10     B.  There are common questions. ........................................................ 8

11     C.  Ms. Vizcarra is typical. ............................................................... 10

12     D.  Ms. Vizcarra and her counsel are adequate ................................ 10

13 IV.  The Rule 23(b)(3) predominance and superiority requirements are met. .......... 11

14     A.  Common liability issues predominate. ........................................ 11

15         1.  Consumer protection and fraud claims. ............................. 11

16         2.  Breach of contract and warranty claims. ........................... 14

17     B.  Plaintiff's damages models satisfy predominance. ..................... 15

18         1.  Restitution (UCL, FAL, CLRA, fraud) ............................. 15

19         2.  Damages (CLRA, contract, fraud, warranty) ................... 17

20     C.  A class action is superior ............................................................ 19

21 VI.  The Rule 23(b)(2) injunction-class requirements are met. .................... 19

22

23

24

25

26

27

28

## Table of Authorities

**Cases**

*Alcantar v. Hobart Serv.*,

 800 F.3d 1047 (9th Cir. 2015) ................................................................................. 8

*All. Mortg. Co. v. Rothwell*,

 10 Cal. 4th 1226, 1241 (Cal. 1995) ....................................................................... 17

*ALLTEL Info. Servs. v. FDIC*,

 194 F.3d 1036 (9th Cir. 1999) ............................................................................... 18

*B.K. v. Snyder*,

 922 F.3d 957 (9th Cir. 2019) ................................................................................. 19

*Bally v. State Farm Life Ins. Co.*,

 335 F.R.D. 288 (N.D. Cal. 2020) ................................................................. 8, 14, 15

*Banks v. R.C. Bigelow, Inc.*,

 2024 U.S. Dist. LEXIS 119458 (C.D. Cal. July 8, 2024) ...................................... 12

*Branca v. Nordstrom, Inc.*,

 2015 U.S. Dist. LEXIS 176888 (S.D. Cal. Oct. 9, 2015) ........................................ 9

*Brazil et al. v. Dell, Inc.*,

 No. 5:07-cv-01700-RMW (N.D. Cal. Dec. 21, 2010) .................................. 11, 12, 14

*Broomfield v. Craft Brew All., Inc.*,

 2018 U.S. Dist. LEXIS 177812 (N.D. Cal. Sep. 25, 2018) ................................ 13, 14

*Brown v. Hain Celestial Grp., Inc.*,

 2015 U.S. Dist. LEXIS 67912 (N.D. Cal. May 26, 2015) ...................................... 12

*Bush v. Rust-Oleum Corp.*,

 2024 U.S. Dist. LEXIS 20131 (N.D. Cal. Feb. 5, 2024) ........................................ 19

*Cabrera v. Bayer Healthcare LLC*,

 2024 U.S. Dist. LEXIS 31709 (C.D. Cal. Feb. 23, 2024) ................................... 9, 15

*Calderon v. Kate Spade & Co., LLC*,

 2020 U.S. Dist. LEXIS 38510 (S.D. Cal. Mar. 5, 2020) ....................................... 17

*Chowning v. Kohl's Dep't Stores, Inc.*,

    735 F. App'x 924 (9th Cir. 2018) ............................................................................. 16

*Clevenger v. Welch Foods Inc.*,

    342 F.R.D. 446 (C.D. Cal. Sept 13, 2022) ............................................................. 11

*Comcast Corp. v. Behrend*,

    569 U.S. 27 (S. Ct. 2013) ..................................................................................... 15

*Dickey v. Advanced Micro Devices, Inc.*,

    2019 U.S. Dist. LEXIS 8740 (N.D. Cal. Jan. 17, 2019) ....................................... 7, 8

*DZ Rsrv. v. Meta Platforms, Inc.*,

    96 F.4th 1223 (9th Cir. 2024) ............................................................................. 8, 14

*Ellis v. Costco Wholesale Corp.*,

    657 F.3d 970 (9th Cir. 2011) .................................................................................. 10

*Ewert v. eBay, Inc.*,

    2010 U.S. Dist. LEXIS 108838 (N.D. Cal. Sep. 30, 2010) ..................................... 14

*Forcellati v. Hyland's, Inc.*,

    2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ........................................... 9

*Gold v. Lumber Liquidators, Inc.*,

    323 F.R.D. 280 (N.D. Cal. 2017) ......................................................................... 8, 11

*Grace v. Apple, Inc.*,

    328 F.R.D. 320 (N.D. Cal. 2018) ........................................................................... 19

*Hadley v. Kellogg Sales Co.*,

    324 F. Supp. 3d 1084 (N.D. Cal. 2018) ............................................................... 11, 13

*Haley v. Macy's, Inc.*,

    2017 U.S. Dist. LEXIS 210486 (N.D. Cal. Dec. 21, 2017) ...................................... 12

*Hinojos v. Kohl's Corp.*,

    718 F.3d 1098 (9th Cir. 2013) ................................................................................. 12

*In re HIV Antitrust Litig.*,

    2022 U.S. Dist. LEXIS 250035 (N.D. Cal. Sep. 27, 2022) ...................................... 11

*In re Pfa Ins. Mktg. Litig.*,

    2021 U.S. Dist. LEXIS 244526 (N.D. Cal. Nov. 3, 2021) ............................................ 17

*In re Pfa Ins. Mktg. Litig.*,

    696 F. Supp. 3d 788 (N.D. Cal. 2021) ......................................................................... 13

*Karim v. Hewlett-Packard Co.*,

    311 F.R.D. 568 (N.D. Cal. 2015) ................................................................................. 15

*Krommenhock v. Post Foods, LLC*,

    334 F.R.D. 552 (N.D. Cal. 2020) ................................................................................. 13

*Kumandan v. Google LLC*,

    2022 U.S. Dist. LEXIS 247427 (N.D. Cal. Dec. 16, 2022) ........................................ 17

*Kwikset Corp. v. Super. Ct.*,

    51 Cal.4th 310 (Cal. 2011) .......................................................................................... 12

*Lambert v. Nutraceutical Corp.*,

    870 F.3d 1170 (9th Cir. 2017) ..................................................................................... 19

*Leitner v. Sadhana Temple of N.Y., Inc.*,

    2014 U.S. Dist. LEXIS 205605 (C.D. Cal. June 10, 2014) ........................................ 15

*Lucas v. Breg, Inc.*,

    212 F. Supp. 3d 950 (S.D. Cal. 2016) .......................................................................... 15

*Lytle v. Nutramax Labs., Inc.*,

    114 F.4th 1011 (9th Cir. 2024) ....................................................................... 15, 16, 18

*Makaeff v. Trump Univ., Ltd. Liab. Co.*,

    309 F.R.D. 631 (S.D. Cal. 2015) ................................................................................. 19

*Martin v. Monsanto Co.*,

    2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar. 24, 2017) ....................................... 18

*McCrary v. Elations Co. LLC*,

    2014 U.S. Dist. LEXIS 200660 (C.D. Cal. Dec. 2, 2014) .......................................... 16

*McMorrow v. Mondelēz Int'l, Inc.*,

    2021 U.S. Dist. LEXIS 42885 (S.D. Cal. Mar. 8, 2021) ............................................ 17

*Mobile Emergency Hous. Corp. v. HP, Inc*.,

  2023 U.S. Dist. LEXIS 235084 (N.D. Cal. Dec. 8, 2023) .................................................. 8

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

  31 F.4th 651 (9th Cir. 2022) ...................................................................................... 9, 11

*Orshan v. Apple Inc*.,

  2024 U.S. Dist. LEXIS 177689 (N.D. Cal. Sep. 30, 2024) .............................................. 11

*Prescott v. Reckitt Benckiser LLC*,

  2022 U.S. Dist. LEXIS 135329 (N.D. Cal. July 14, 2022) ............................................... 16

*Pulaski & Middleman, LLC v. Google, Inc*.,

  802 F.3d 979 (9th Cir. 2015)........................................................................................... 15

*Rodman v. Safeway, Inc*.,

  2014 U.S. Dist. LEXIS 31438 (N.D. Cal. Mar. 9, 2014) ............................................. 9, 14

*Ruiz Torres v. Mercer Canyons Inc*.,

  835 F.3d 1125 (9th Cir. 2016).......................................................................................... 10

*Sharpe v. Puritan's Pride, Inc*.,

  466 F. Supp. 3d 1066 (N.D. Cal. 2020) ........................................................................... 17

*Simon v. Carter's, Inc*.,

  2020 U.S. Dist. LEXIS 265097 (N.D. Cal. July 13, 2020) .............................................. 17

*Spann v. J.C. Penney Corp*.,

  307 F.R.D. 508 (C.D. Cal. 2015) ................................................................... 8, 10, 11, 12

*Stathakos v. Columbia Sportswear Co.*,

  2017 U.S. Dist. LEXIS 72417 (N.D. Cal. 2017)..................................................... 10, 12, 16

*Vaccarino v. Midland Nat'l Life Ins. Co.*,

  2013 U.S. Dist. LEXIS 88612 (C.D. Cal. June 17, 2013) ................................................ 14

*Vizcarra v. Unilever United States*,

  339 F.R.D. 530 (N.D. Cal. 2021)..................................................................................... 16

*Wiener v. Dannon Co.*,

  255 F.R.D. 658 (C.D. Cal. 2009) ..................................................................................... 17

*Wolph v. Acer Am. Corp.*,

    272 F.R.D. 477 (N.D. Cal. 2011) .................................................................... 11

**Statutes**

Cal. Bus. & Prof. Code § 17501 .................................................................... 12, 13

Cal. Civ. Code § 1770 .................................................................................... 12

### <u>Notice of Motion and Motion</u>

 Please take notice that on May 15, 2025, Plaintiff Nea Vizcarra will move the Court to certify this case as a class action. Plaintiff Vizcarra seeks to certify a class and subclasses as defined in the memorandum of law. Plaintiff also moves for her appointment as class representatives and for the appointment of Dovel & Luner LLP as class counsel. The motion is based on the attached memorandum of law, declarations, and exhibits.

1    Michaels is one of the country's largest retailers of arts and crafts supplies. Throughout the

2    class period, Michaels permeated its website with advertisements for time-limited coupons offering at

3    least "20% off all regular price purchases." The coupons could be used in stores or online. But the

4    coupons were not really time-limited; they were always available. And on top of the coupons,

5    Michaels bombarded its website and stores with other deep discounts on product categories. As a

6    result, consumers who used the coupons were not really getting a discount off Michaels' true

7    "regular" prices. *See* Dkt. 56 (Order on Motion to Dismiss) 1-2 (summarizing the case).

8    All proposed class members saw and used coupons with materially-similar representations.

9    According to the Ninth Circuit, the California consumer protection claims that Ms. Vizcarra asserts

10   are "ideal" for certification because they turn on objective standard: whether the coupons are likely to

11   mislead a reasonable consumer. The same is true for the fraud claim. And Plaintiff's contract and

12   warranty claims similarly turn on the objective meaning of common contract terms.

13   Plaintiff presents multiple classwide damages models that satisfy *Comcast*. Plaintiff also

14   seeks an injunction that provides classwide relief against future deceptive coupon discounts.

15   Plaintiff's claims meet all requirements for certification. The Court should certify a Rule

16   23(b)(3) damages class and a (b)(2) injunction class.

## I.    Facts.

### A.    Michaels sells its own "private and exclusive" brand of arts and crafts supplies.

19   Michaels is "the largest arts and crafts specialty retailer in North America." Ex. 1 (Michaels

20   2021 10-K) at VIZCARRA000158. Michaels sells through its California stores and its website

21   (michaels.com). *Id.* at 195, 162. Michaels sells some products made by other companies. But most of

22   its sales are its own "private and exclusive brand" (its Private Brand) products. *Id.* at 178, 162

23   (Private Brand products were 59% of sales in 2020). Example Private Brand products include Craft

24   Smart (paint), Loops & Threads (yarn), and Studio Decor (frames).[1]  *Id.* at 162.

### B.    Michaels' coupon discounts.

26   Throughout the class period, Michaels offered purportedly time-limited coupon discounts for

27   at least "20% off all regular price purchases." Here is a representative example:

28

---

[1] Other example Private Brands include: Recollections, Bead Landing, Creatology, Ashland, Celebrate It, ArtMinds, and Artist's Loft. *Id.* at 162.



Ex. 2 (MICHAELS0000106).[2]

Sometimes the coupons offered more than 20% off, e.g., 30% off products' regular prices. Ex. 3 (VIZCARRA000313). But otherwise, the representations were the same. *See id.*

As shown above, Michaels' website was also permeated with banner advertisements linking to the coupons. *See, e.g.* Ex. 4 (VIZCARRA000067) (June 29, 2021 homepage).

During the online shopping process, Michaels highlighted the purported coupon savings at every step. As consumers shopped, the coupon code was shown below the list price:

---

[2] This internet archive happened to capture the "Serra Shopping Center" location. Michaels' records confirm that the coupons were ▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Jacobson Decl. ¶6; Ex. 5 (excerpt from MICHAELS0000307) (the coupons were available for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Ex. 6 (VIZCARRA000146-147); Silverman Decl. ¶67. When a consumer added an item to their cart, the website compared the "Sale" coupon price to the "Reg." (regular) price:



Ex. 7 (VIZCARRA000144-145); Silverman Decl. ¶68. And when the coupon was applied, the cart showed a strikethrough of the purported former, regular price:

Ex. 8 (VIZCARRA00004); Silverman Decl. ¶69.

**C.    The coupon discounts were deceptive.**

Consumers believe that sales are time-limited. Silverman Decl. ¶¶58-59. This makes sense,

because if a sale never ends, it isn't really a sale. Consumers aren't really paying a lower price than they could normally get. *See id.* For Michaels' coupons, this common-sense belief was confirmed by the "valid through" dates. The dates made reasonable consumers believe that, if they didn't use a coupon before it expired, they would have had to pay the higher "regular" price. *Id.* ¶¶58-60, 72.

In truth, the coupons were always available, so class members would never have had to pay the "regular" price. When the expiration date for a coupon hit, Michaels just replaced the coupon with a materially-similar one, with a new expiration date. Here are representative examples:



Ex. 9 (MICHAELS0000184, 188, and 192) (annotations added). The first coupon expired on January 1, 2022. On or before that date, Michaels replaced it with a materially-identical coupon, with a January 29, expiration. On or before that expiration date, Michaels replaced it with a materially-identical coupon, with a February 26 expiration. And so on throughout the class period.

Michaels' internal logs confirm that materially-similar coupons were ██████████████ ██████████████████████████. *See* Ex. 5 (excerpt from MICHAELS0000307); Jacobson Decl. ¶6. Here is an illustrative excerpt, for coupons associated with the promotion code 20MADEBYYOU (shown in the images above):

1

2

3

4

5    As the table shows, this coupon ██████████████████████████████████

6    And both before and after this time, ████████████████████████████████████. *See* Ex. 5

7    (excerpt from MICHAELS0000307); Jacobson Decl. ¶6.

8    Because the coupons were always available and because Michaels saturated the website with

9    advertisements (making them nearly impossible to miss), most consumers used them. Plus, Michaels

10   also advertised frequent, deep discounts on particular categories of products. For example, ████

11   ████████████████████████████████████████████████████████████████████████

12   ███████ Jacobson Decl. ¶7 (summarizing MICHAELS0000067, which shows ████████ product-

13   specific discounts during the class period); Ex. 14 (table from MICHAELS0000067, showing the

14   multitude of product-category sales running in 2021 alone); Jacobson Decl. ¶8 (explaining Ex. 14).

15   The result of the always-available coupons, combined with pervasive sales on product categories, was

16   that the advertised 20% discounts were not really discounts off the regular price (the price that most

17   consumers paid).

18   The coupons were deceptive to reasonable consumers. When consumers used the coupons,

19   they thought they were getting a limited-time deal and paying less than they would have to pay when

20   the coupon was not available. Silverman Decl. ¶¶71-72, 75. Consumers also thought they were

21   getting a discount off the "regular price" (the price that most people had to pay). *Id.* ¶73. In truth, the

22   coupons were always available (among other frequent sales). And in truth, consumers were not

23   getting a 20% discount off the regular price.

24   Take an example consumer that used a 20% off coupon to buy a $10 "regular price" frame.

25   She thought that, by using the coupon, she was getting a frame for $8 that she normally would have

26   to pay $10 for, when the coupon was not available. And she reasonably expected that most people

27   were paying $10 for that frame. In truth, she would never have had to pay $10 for the frame, because

28

3 ████████████████████████████████████████████████

1  the coupons were always available. And most people were not paying $10 for the frame (most were
2  paying $8 or less).

3         As mentioned above, Michaels sometimes offered coupons for more than 20% off (e.g., 30%
4  off). But for these coupons, the 20% portion of the discount was misleading because a discount of
5  that much was always available. So for the 20% portion of the discount, the deceptive impact on
6  consumers was the same. Silverman Decl. ¶77. Take a consumer that used a 30% off coupon to buy a
7  $10 "regular price" frame. She thought she was getting a time-limited, $3 discount off the regular
8  price. But coupons for at least 20% off were always available. So at least $2 of that supposed
9  discount (at least 20%) was misleading.

10        For Michaels Private Brand products in particular, there is no excuse for it advertising
11 misleading discounts and regular prices. In contrast to third-party items sold by numerous
12 competitive stores, at potentially different prices unknown to Michaels, these items are exclusive to
13 Michaels. Michaels knew what discounts were available, knew the true regular prices, and knew that
14 the coupons were misleading.[4]

15        **D.    Ms. Vizcarra was misled by the coupon discounts.**

16        Ms. Vizcarra lives in Salinas, California. Vizcarra Decl. ¶1. From December 2020 to January
17 2023, she bought multiple Private Brand products, in both a Michaels California store and on
18 Michaels.com. She purchased Private Brand products using Michaels' coupons offering at least 20%
19 off "all regular price purchases." Vizcarra Decl. ¶¶2-3. For example, she bought Artist's Loft
20 brushes, Craft Smart paint, and Loops & Threads yarn. *Id.*

21        Ms. Vizcarra relied on the coupons when she decided to purchase these items. Vizcarra Decl.
22 ¶3. She believed that the discounts were time-limited (not always available). And she believed that
23 she was really getting at least a 20% discount off the regular price (the price she would have had to
24 pay before and after the coupon period, and the one most consumers paid). None of this was true. If
25 she had known the truth, she would not have purchased the products or would have paid less for
26 them. *Id.* ¶4.

27
28        [4] Michaels also sells limited Private Brand products via Amazon and the Walmart website.
   But Michaels is still the seller. Ex. 10 (Artists Loft product on Amazon "sold by: Michaels Arts and
   Crafts"). Ex. 11 (Artists Loft product on Walmart "sold and shipped by: Michaels Arts and Crafts").

**II.    Proposed class and subclasses.**

California Class: All California consumers that purchased a Private Brand product from Michaels.com or a Michaels California store, between January 1, 2020 and June 30, 2023,[5] using a coupon offering at least 20% off all regular price purchases.[6]

Online Subclass: Class members who purchased from Michaels.com.

In-store Subclass: Class members who purchased from a Michaels California store.

Ms. Vizcarra seeks to certify the following claims: violations of the False Advertising Law (Count 1), Consumer Legal Remedies Act (Count 2), and Unfair Competition Law (Count 3), as well as breach of contract (Count 4), breach of express warranty (Count 5), and intentional misrepresentation (Count 9). *See* Dkt. 67 (operative complaint).

**III.    The Rule 23(a) prerequisites are met.**

**A.    The proposed classes and subclasses are sufficiently numerous.**

Under Rule 23(a)(1), "Plaintiff must show that the class is so numerous that joinder of all members is impracticable." *Floyd v. Saratoga Diagnostics, Inc.*, 2021 U.S. Dist. LEXIS 99922, at *1 (N.D. Cal. May 26, 2021) (cleaned up). Courts "have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Dickey v. Advanced Micro Devices, Inc.*, 2019 U.S. Dist. LEXIS 8740, at *7 (N.D. Cal. Jan. 17, 2019).

Michaels produced a sample of in-store coupon-usage data, for certain SKUs purchased by Ms. Vizcarra. During the class period, this sample indicates ███████ coupon units sold nationwide. Jacobson Decl. ¶5 (summarizing MICHAELS0000068). About 10% of Michaels U.S. stores are in California. *See* Ex. 1 (2021 Michaels 10-K) at VIZCARRA000195. And Private Brand products are over half of Michaels' sales. *See* Section I.A. above. So based on this sample alone, there are at least ██████████ of coupon users in the class and in-store subclass (██████ x 10%

---

[5]  This case was filed in February of 2023. In July 2023, Michaels began purporting to impose an arbitration clause, via its website.

[6] The class excludes any consumer who already returned all relevant products. It also excludes persons associated with the Court, Michaels, or counsel, among other standard exclusions. *See* Proposed Order ("Excluded Persons").

x 50%).[7] And the sample Michaels provided is only a fraction of Private Brand SKUs.

Michaels also produced data showing ██████████ online transactions nationwide, during the class period. Jacobson Decl. ¶9 (summarizing MICHAELS0000064). By the percentage of Michaels stores in California (or by population) that is ████████ California transactions. And as mentioned above, over half of Michaels sales are Private Brand (implying at least ████████ online Private Brand sales to California). Given that the coupons are so prominently advertised online (*see* Section I.B above), the Court can readily conclude that numerosity is satisfied for the online subclass.

In any case, Michaels "does not dispute that Plaintiff[] satisf[ies] the numerosity requirement." *Mobile Emergency Hous. Corp. v. HP, Inc*., 2023 U.S. Dist. LEXIS 235084, at *22 (N.D. Cal. Dec. 8, 2023) (cleaned up).

### B.     There are common questions.

Rule 23(a)(2) requires "questions of law or fact common to the class.'" *Dickey*, 2019 U.S. Dist. LEXIS 8740, at *7. Commonality is met where claims "depend upon a common contention" that "is capable of classwide resolution." *Bally v. State Farm Life Ins. Co*., 335 F.R.D. 288, 301 (N.D. Cal. 2020) (quotes omitted). The required showing is "relatively minimal." *Gold v. Lumber Liquidators, Inc*., 323 F.R.D. 280, 288 (N.D. Cal. 2017) (quotes omitted). A "single common question will do." *Alcantar v. Hobart Serv*., 800 F.3d 1047, 1052 (9th Cir. 2015). Here all class members saw materially-similar representations: a promise of at least 20% off all regular price purchases. *See* Section I.B above. This gives rise to multiple common questions.

FAL, CLRA, UCL and fraud claims. Common questions include: (1) how frequently the coupons were available; (2) the actual prices at which Private Brand products were sold; (3) whether the coupons are likely to deceive reasonable consumers. *See Spann v. J.C. Penney Corp*., 307 F.R.D. 508, 518 (C.D. Cal. 2015) (commonality satisfied, in a deceptive discount case, based on similar questions); *DZ Rsrv. v. Meta Platforms, Inc*., 96 F.4th 1223, 1233 (9th Cir. 2024) ("The district court properly determined that each of the five elements of fraud under California law is capable of classwide resolution").

---

[7] California is also about 11% percent of the U.S. population, so the fraction of stores is proportional. *See* https://www.census.gov/quickfacts/ (California has about 39 million people and the U.S. population is about 334 million).

As mentioned above, some class members used coupons offering purportedly larger discounts (e.g. 30%). But the alleged deception is the same: a consumer was not really getting that promised 30% discount because a discount of at least 20% was always available. And it is that common, deceptive discount (the 20% component) that Plaintiff challenges. *See Branca v. Nordstrom, Inc*., 2015 U.S. Dist. LEXIS 176888, at *14-15 (S.D. Cal. Oct. 9, 2015) (differences in product types or discount amounts were "immaterial" because the claims focused on the common contention that the "% Savings" was deceptive)[8]; *Forcellati v. Hyland's, Inc*., 2014 U.S. Dist. LEXIS 50600, at *28 (C.D. Cal. Apr. 9, 2014) ("immaterial" differences across products cannot defeat commonality when plaintiff challenges a fact "common" to them all). For the consumer protection and fraud claims, commonality is satisfied.

Breach of contract and warranty claims. Common question include: (1) whether the listed "regular price" and associated discount were material contract terms or express warranties; and (2) whether Michaels breached the contract or warranty. *See Rodman v. Safeway, Inc*., 2014 U.S. Dist. LEXIS 31438, at *16 (N.D. Cal. Mar. 9, 2014) (finding commonality met for breach of contract claims because the contract terms, and alleged breach, are common questions); *Cabrera v. Bayer Healthcare LLC*, 2024 U.S. Dist. LEXIS 31709, at *23 (C.D. Cal. Feb. 23, 2024) (same for an express warranty claim).

A "district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666-67 (9th Cir. 2022). For all claims, the common questions can be resolved with common evidence. This evidence includes internet archive pages and Michaels' records showing the terms and availability of the coupons, and Michaels' transactional data showing the "regular" prices advertised versus the prices charged. *See* Section I.A; Weir Decl. ¶83. Common evidence also includes the testimony of advertising expert Bruce Silverman, concerning whether the coupon discounts were misleading to reasonable consumers. *See* generally Silverman Decl. Each common question is capable of resolution with this classwide evidence. *See Stathakos v. Columbia Sportswear*

---

[8] *Branca* addressed commonality in the analogous context of analyzing substantial similarity, for purposes of standing. *See id.*

*Co.*, 2017 U.S. Dist. LEXIS 72417, at *41-42 (N.D. Cal. 2017) (commonality satisfied where "plaintiffs' expert" has "submitted an expert declaration indicating that such [deceptive discount] practices are likely to mislead reasonable consumers"); *Spann*, 307 F.R.D. 508, 518 (in a deceptive discount case, commonality satisfied based on similar types of evidence).

### C.    Ms. Vizcarra is typical.

A plaintiff's claims need only be "reasonably coextensive with those of absent class members." *Ruiz Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1141 (9th Cir. 2016). "Under the Rule's permissive standards," a representative's claims need "not be substantially identical." *Id.* (cleaned up). The focus is on the "nature of the claim or defense," not the "specific facts from which it arose or the relief sought." *Id.* This means that, so long as the claims are of the same nature, a representative's specific underlying facts may differ. Courts consider whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotes omitted).

As addressed above (Section I.D), Ms. Vizcarra made Private Brand purchases both in store and online. So she is a member of the class, the online subclass, and the in-store subclass. She asserts the same claims as proposed class and subclass members. The course of conduct she challenges—deceptive coupons offering at least 20% off all regular price purchases—is common. *See Torres*, 835 F.3d at 1141 n.11 (the "'commonality and typicality requirements of Rule 23(a) tend to merge.'"). She alleges the same deception and seeks the same damages. Ms. Vizcarra is typical.

### D.    Ms. Vizcarra and her counsel are adequate.

Courts ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 985 (9th Cir. 2011). Plaintiff and her counsel have no conflicts and will vigorously prosecute the case. Vizcarra Decl. ¶¶6-7; Jacobson Decl. ¶5. Plaintiff's counsel has substantial experience (and success) litigating consumer class actions and deceptive discount cases. Jacobson Decl. ¶¶2-4. Plaintiff and her counsel are adequate.

**IV.    The Rule 23(b)(3) predominance and superiority requirements are met.**

    **A.    Common liability issues predominate.**

Predominance asks whether common issues "are more prevalent or important" than individual issues. *Olean*, 31 F.4th 651 at 664 (quotes omitted); *In re HIV Antitrust Litig.*, 2022 U.S. Dist. LEXIS 250035, at *59 (N.D. Cal. Sep. 27, 2022) (predominance is a "comparative standard."). This "does not mean that common questions must outnumber individual questions. In assessing predominance, courts give more important questions greater weight." *Orshan v. Apple Inc.*, 2024 U.S. Dist. LEXIS 177689, at *31 (N.D. Cal. Sep. 30, 2024). Certification "may be proper" if even "a single common question is so significant that it predominates over all other individual questions." *Id.* And any "doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011).

Courts have previously found that deceptive discount claims satisfy predominance. *Spann*, 307 F.R.D. at 521-524. *Brazil et al. v. Dell, Inc.*, No. 5:07-cv-01700-RMW (N.D. Cal. Dec. 21, 2010) Dkt. 306 at 6-8 (attached as Ex. 12). The same is true here. Plaintiff's claims satisfy predominance because the key liability issues are common questions.

    **1.    Consumer protection and fraud claims.**

As mentioned above, all class members saw materially-similar representations: a promise of at least 20% off all regular price purchases. *See* Section I.B. This gives rise to common questions that are essentially dispositive of liability.

<u>CLRA, UCL fraudulent prong, and FAL claims</u>

Because "deception and materiality under the FAL, CLRA, and UCL are objective questions, they are ideal for class certification because they will not require the court to investigate class members' individual interaction with the challenged products." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (cleaned up); *Bradach v. Pharmavite, LLC*, 735 F. App'x 251, 255 (9th Cir. 2018) (such claims are "ideal for class certification"); *Gold*, 323 F.R.D. at 290 (California consumer protection claims are "particularly amenable to class certification" due to this "objective test"); *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 460 (C.D. Cal. Sept 13, 2022)

(because "the reasonable consumer test is inherently an objective analysis," it "may be decided on a class-wide basis.").

Here, deception can be shown with common evidence. Internet archives ████████ █████ show that the advertised 20% off coupons were always available. *See* Section I.C above. Michaels' transactional data will show whether the advertised "regular" prices were in fact regularly charged for any given product. *See id*; Weir Decl. ¶83; Jacobson Decl. ¶10 (pre-certification, Michaels produced transactional data for Ms. Vizcarra's purchases that is representative of what it maintains for all class members).[9] And the testimony of advertising expert Bruce Silverman can answer the question of whether the coupons are likely to mislead a reasonable consumer. Silverman Decl. ¶¶75-79; *see Stathakos*, 2017 U.S. Dist. LEXIS 72417, at *41-42 (price advertisements and expert testimony are common evidence); *Brazil,* No. 5:07-cv-01700-RMW, Dkt. 308 at 7-8 (Ex. 12) (advertised pricing and actual prices are common evidence); *Spann,* 307 F.R.D. at 521-524 (same).

Materiality can also be shown with common evidence. For the CLRA § 1770(a)(13 and FAL §17501 claims, the misrepresentations are material as a matter of law. The "legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a 'material' misrepresentation, and courts must defer to that determination." *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1107 (9th Cir. 2013) (addressing CLRA § 1770(a)(13) and FAL §17501 claims); *see Kwikset Corp. v. Super. Ct*., 51 Cal.4th 310, 329-31 (Cal. 2011); *Banks v. R.C. Bigelow, Inc*., 2024 U.S. Dist. LEXIS 119458, at *20-21 (C.D. Cal. July 8, 2024) ("when the legislature has seen fit to specifically outlaw certain statements in order to protect consumers, such statements are material as a matter of law"); *Brown v. Hain Celestial Grp., Inc*., 2015 U.S. Dist. LEXIS 67912, at *23 (N.D. Cal. May 26, 2015) (summarizing caselaw).

CLRA § 1770(a)(13) specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770. And FAL § 17501

---

[9] For FAL § 17501 in particular, Michaels' transactional data will answer whether the advertised regular price was the "prevailing market price" during the specified time period, for Michaels' Private Brand products. *See* Cal. Bus. & Prof. Code § 17501; *Haley v. Macy's, Inc*., 2017 U.S. Dist. LEXIS 210486, at *18-19 (N.D. Cal. Dec. 21, 2017) (the prevailing market price is the "most widely occurring or accepted" price (quotes omitted)); Dkt. 56 (Order on MTD) at 8-9 (suggesting that the prevailing price is the price that "most consumers" pay); *see* Weir. Decl. ¶83.

states: "No price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising." Cal. Bus. & Prof. Code § 17501. For these claims, the legislature determined that a violation is a material deception, and that determination controls. *Hinojos,* 718 F.3d at 1107. So materiality can be established classwide as a matter of law.

For the more general deception claims under the UCL, CLRA, and FAL, materiality can be shown with common evidence. California courts have "explicitly rejected the view that a plaintiff must produce extrinsic evidence such as expert testimony or consumer surveys" to prove materiality. *Hadley*, 324 F. Supp. 3d at 1115 (cleaned up). Instead, the factfinder can infer materiality from the advertising itself (as well as defendant's own documents). *See id.* And here, Plaintiff has provided expert testimony on materiality. *See* Silverman Decl. ¶¶64-74; *Hadley,* 324 Supp. 3d at 1115 (Silverman's testimony is common evidence of materiality); *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 565 (N.D. Cal. 2020) (same). So for these claims, materiality can be shown with common evidence.

UCL "unlawful" claim. This claim incorporates the FAL and CLRA claims as predicate violations. Common issues predominate for the same reasons.

UCL "unfair" claim. This claim turns on the objective standards that courts apply to determine unfairness. *See In re Pfa Ins. Mktg. Litig*., 696 F. Supp. 3d 788, 815 (N.D. Cal. 2021) (explaining the "balancing" test and "tethering" test). Under these standards, liability turns on whether Michaels' common practice of using deceptive coupons offends California's clear public policy against deceptive discounts. "Because these questions are the most important in determining liability under the unfair prong of the UCL, these common questions would predominate over individual ones." *Id.* at 815.

Fraud. Similar to the consumer protection claims, fraud requires "a showing of a misrepresentation that was material." *Broomfield v. Craft Brew All., Inc.,* 2018 U.S. Dist. LEXIS 177812 at *39 (N.D. Cal. Sep. 25, 2018). And under "California law, when the same material misrepresentations have actually been communicated to each member of a class, an inference of reliance arises as to the entire class." *DZ Rsrv. v. Meta Platforms, Inc*., 96 F.4th at 1237 (9th Cir.

1    2024) (quotes omitted). So the same common evidence of deception and materiality (addressed

2    above) can resolve these issues. Scienter is likewise a common question that can be proved with

3    common evidence of Michaels' intent. *See Broomfield,* 2018 U.S. Dist. LEXIS 177812 at *39. So for

4    this claim, common issues predominate. *See DZ Rsrv.* 96F at 1238 (affirming a district court's

5    finding that common questions predominate for a California fraud claim); *Broomfield* 2018 U.S. Dist.

6    LEXIS 177812 at *39 (finding predominance satisfied for a California fraud claim); *Brazil,* No. 5:07-

7    cv-01700-RMW, Dkt. 306 at 6 (Ex. 12) (in a deceptive discount case, finding predominance satisfied

8    for a California "intentional misrepresentation" claim).

9                    **2.        Breach of contract and warranty claims.**

10    Courts "have long found" that contract claims "present the classic case for treatment as a class

11    action." *Vaccarino v. Midland Nat'l Life Ins. Co.*, 2013 U.S. Dist. LEXIS 88612, at *57-58 (C.D.

12    Cal. June 17, 2013). This is because it is an "axiom of contract law" that the "agreement is interpreted

13    wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or

14    understanding of the standard terms of the writing." *Bally,* 335 F.R.D. at 302 (cleaned up); *Rodman*,

15    2014 U.S. Dist. LEXIS 31438, at *24-25 (predominance is met because any "dispute over the

16    meaning" of the terms is "far more likely to hinge on the objectively reasonable interpretation of the

17    contractual language rather than the interrogation of each individual class member's personal

18    understanding of these words."); *Ewert v. eBay, Inc.*, 2010 U.S. Dist. LEXIS 108838, at *20-21 (N.D.

19    Cal. Sep. 30, 2010) (predominance is met because "court need not delve into the actual knowledge of

20    individual class member" to interpret the contract terms).

21    Here, the key terms of the contract are materially the same classwide. The coupon discounts

22    promised consumers at least a 20% discount off the purported "regular price" of a product. *See*

23    Section I.B above. That told reasonable consumers that they were getting an item worth the regular

24    price, but for less (i.e., that they were getting a product worth at least 20% more than they were

25    paying). And this promised discount was a key term of the deal. *See* Silverman Decl. ¶71. In return,

26    consumers promised to pay Michaels the supposedly discounted price. Whether this is the correct

27    interpretation of the contract can be resolved classwide, based on common evidence. Predominance is

28    met.

Similarly, the alleged warranty is the same classwide: a promise to provide a product that was worth the "regular price," but at a 20% discount. When the terms of an alleged warranty are common, predominance is satisfied. This is because "proof of individual reliance is not required" and the meaning of the warranty is an objective question. *See Cabrera v. Bayer Healthcare LLC*, 2024 U.S. Dist. LEXIS 31709, at *22-23 (C.D. Cal. Feb. 23, 2024) (predominance is satisfied because the dispute about the meaning of "complete" is an objective, classwide issue); *Karim v. Hewlett-Packard Co.*, 311 F.R.D. 568, 577 (N.D. Cal. 2015) (same).

### B.  Plaintiff's damages models satisfy predominance.

To satisfy predominance under the Supreme Court's *Comcast* decision, a damages model need only measure "damages that stem from the defendant's alleged wrongdoing" and be "'susceptible of measurement across the entire class.'" *Bally*, 335 F.R.D. at 303 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (S. Ct. 2013)). *Comcast* has "generally been construed to stand for the unremarkable proposition that plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Lytle v. Nutramax Labs., Inc.,* 114 F.4th 1011, 1027 (9th Cir. 2024) (quotes omitted). A model only runs afoul of *Comcast* if it so "untethered from plaintiff's theory of liability" that it "has no possibility of demonstrating the amount of damages in a particular case." *Id.* (quotes omitted). Said differently, a model only violates *Comcast* if it is so disconnected from the liability theory that is "arbitrary." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) (quotes omitted). Plaintiff presents several damages models that each satisfy *Comcast*.

### 1.  Restitution (UCL, FAL, CLRA, fraud)

"Restitution is available for claims brought under the UCL, FAL, and CLRA." *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 964 (S.D. Cal. 2016); *Leitner v. Sadhana Temple of N.Y., Inc.,* 2014 U.S. Dist. LEXIS 205605, at *33 (C.D. Cal. June 10, 2014) ("plaintiff can recover restitution as a remedy for a defendant's fraud").

<u>Price premium</u>. Plaintiff's primary restitution model measures how the deceptive coupon discounts artificially inflated the purportedly discounted price (the price class members paid) and

caused class members to pay a wrongful price premium. These damages stem directly from the "actions that created the legal liability" (the deceptive coupons). *Lytle* 114 F.4th at 1027.

This price premium model is a proper way to calculate restitution. In a deceptive discount case, a "proper calculation of restitution" is "price paid versus value received." *Chowning v. Kohl's Dep't Stores, Inc*., 735 F. App'x 924, 925 (9th Cir. 2018). Plaintiff's model calculates the artificial price premium caused by the deceptive 20% discount. Weir Decl. ¶12. This "price premium" reflects the "difference between what the plaintiff paid and the value of what the plaintiff received." *Prescott v. Reckitt Benckiser LLC*, 2022 U.S. Dist. LEXIS 135329, at *30 (N.D. Cal. July 14, 2022) (quotes omitted); *Stathakos,* 2017 U.S. Dist. LEXIS 72417, at *33 ("a proper measure of restitution could be the delta between the price plaintiffs actually paid and the price a reasonable consumer would have paid absent the [deceptive] reference price.").

Here, conjoint expert Colin Weir designed a choice based conjoint survey to measure the overpayment attributable to the deceptive discounts. *See* Weir Decl. ¶¶19-81. The Ninth Circuit has recognized that "conjoint analysis is a well-accepted technique that is frequently used to establish damages in [consumer protection] actions." *Lytle*, 114 F.4th at 1033; *see Vizcarra v. Unilever United States*, 339 F.R.D. 530, 553 (N.D. Cal. 2021) (courts "routinely hold that choice-based conjoint models … satisfy *Comcast's* requirements."). And as the Ninth Circuit recently confirmed, "class action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial." *Lytle* 114 F.4th at 1024. Mr. Weir's testimony shows that Plaintiff's restitution model is capable of classwide measurement.

Recission and return. Plaintiff also offers an alternative restitution model: class members can elect to return their unused or undamaged products for a full refund.[10] *See Spann,* 2015 U.S. Dist. LEXIS 42545, at *15 ("Rescission with complete restitution can be an appropriate remedy under the

---

[10] Restitution is a "flexible concept that allows for the equitable return of money" and the Court has "very broad discretion" on the remedy. *McCrary v. Elations Co. LLC*, 2014 U.S. Dist. LEXIS 200660, at *47-48 (C.D. Cal. Dec. 2, 2014) (quotes omitted). When a consumer has been deceived into buying a product, courts have not required that the product be like new (e.g., unworn clothing or products in the package). It is fair to allow the return of unused or undamaged items.

laws at issue in this [deceptive discount] case."); *Calderon v. Kate Spade & Co., LLC*, 2020 U.S. Dist. LEXIS 38510, at *21-23 (S.D. Cal. Mar. 5, 2020) ("the Court could fashion a remedy [in a deceptive discount case] by rescinding the transactions and refunding the amounts"); *Simon v. Carter's, Inc*., 2020 U.S. Dist. LEXIS 265097, at *10 (N.D. Cal. July 13, 2020) (in a deceptive discount case, noting the availability of recission and return). This model allows those class members who would not have purchased the products, but for the deceptive discount, to return them for a refund. Michaels regularly processes returns under its policy. Ex. 13 (Michaels processed ███████ returns during the class period) at MICHAELS0000070-73, 75-76. And the calculation is straightforward: class members return the items and receive back the purchase price. Weir Decl. ¶82; *see In re Pfa Ins. Mktg. Litig*., 2021 U.S. Dist. LEXIS 244526, at *64-65 (N.D. Cal. Nov. 3, 2021) ("plaintiffs have adequately shown that LSW's transactional data … can be employed to effectuate any requests for rescission in a manner that would not defeat predominance").

### 2. Damages (CLRA, contract, fraud, warranty)

<u>Price premium</u> (CLRA, warranty, contract, fraud). Plaintiff's price premium model (described above) also measures out-of-pocket damages for these claims. *See McMorrow v. Mondelēz Int'l, Inc*., 2021 U.S. Dist. LEXIS 42885, at *40 (S.D. Cal. Mar. 8, 2021) (certifying a price premium model of "actual damages" under the CLRA); *Wiener v. Dannon Co*., 255 F.R.D. 658, 670 (C.D. Cal. 2009) ("Actual damages" are available for "breach of express warranty claims"); *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1241 (Cal.4th 1995) ("recovery in a tort action for fraud is limited to the actual damages suffered"); *Kumandan v. Google LLC*, 2022 U.S. Dist. LEXIS 247427, at *35 (N.D. Cal. Dec. 16, 2022) (certifying a price premium model for a breach of contract claim).

<u>Expectation damages</u> (CLRA, contract, warranty). For CLRA claims, expectation damages measure the benefit a plaintiff would have received if the fraudulent statements were true. *See Sharpe v. Puritan's Pride, Inc*., 466 F. Supp. 3d 1066, 1076 (N.D. Cal. 2020) (in a deceptive discount case, the CLRA allows for "benefit-of-the-bargain" damages, i.e., "satisfying the expectancy interest of the defrauded plaintiff." (quotes omitted)); *Id.* at 1076 ("benefit-of-the-bargain damages are typically available in a California fraud-based action").

Similarly, for breach of contract, these damages measure an "individual's interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed." *ALLTEL Info. Servs. v. FDIC*, 194 F.3d 1036, 1039 (9th Cir. 1999) (quoting Restatement (Second) of Contracts § 344 (1981)) (cleaned up). Similarly, for breach of express warranty, these damages measure the benefit a plaintiff would have received if the warranty was honored. *See Martin v. Monsanto Co.*, 2017 U.S. Dist. LEXIS 135351, at *22-23 (C.D. Cal. Mar. 24, 2017).

The "expectation interest" is "an individual's interest in having the benefit of his bargain by being put in as good a position as he would have been" had the relevant promise been fulfilled. *ALLTEL* 194 F.3d at 1039 n.3 (quotes omitted). Here, Michaels promised class members that, by buying during a temporary sale, they would save the difference between the "regular price" (what they would normally have to pay) and the discounted price (what they paid). *See* Silverman Decl.¶¶71, 73, 79; Weir Decl. ¶30 (according to research on reference pricing, a "'comparative price advertisement, regular price $10.00, on sale $7.99, suggests a monetary worth of $10.00 and a savings of $2.01'"). If that promise had been fulfilled (i.e., the coupons were fully truthful), class members would have achieved a 20% savings (e.g., saving $2 on an item they would normally pay $10 for). In reality, class members received no such savings because the coupons were always available. No class member would ever have had to pay the "regular" price. So to put class members in the position they would have been had the promise been fulfilled—i.e., to give class members the benefit of the bargain—they need to receive the savings they were promised (20% of the listed regular price). *See* Weir Decl. ¶¶15-16.

These damages stem directly from the "actions that created the legal liability" (the deceptive coupons). *Lytle* 114 F.4th at 1027. And these damages—the savings that consumers were promised but not given—can be measured using Michaels' data. *See* Weir Decl. ¶16. Plaintiff's expectation damages model satisfies *Comcast*.

*   *   *

At this stage, the issue is not whether Plaintiff's damages models are unimpeachable or whether the factfinder will adopt them. What matters is that they are all reasonably tied to Plaintiff's

theory of liability. *See Grace v. Apple, Inc*., 328 F.R.D. 320, 340 (N.D. Cal. 2018) (a defendant's assertions that a model is "flawed" cannot defeat certification when the model is "tied to plaintiffs' theory of liability" (quotes omitted)); *Makaeff v. Trump Univ., Ltd. Liab. Co*., 309 F.R.D. 631, 637 (S.D. Cal. 2015) (a damages model satisfies *Comcast* so long as it is not an "arbitrary measurement" wholly divorced from the liability theory); *see also Lambert v. Nutraceutical Corp*., 870 F.3d 1170, 1183 (9th Cir. 2017) ("[c]lass wide damages calculations" are "particularly forgiving," and "California law requires only that some reasonable basis of computation of damages be used"). Plaintiff's damages models meet this standard and satisfy predominance.

### C.    A class action is superior.

Courts consider "four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *Dickey,* 2019 U.S. Dist. LEXIS 8740, at *19 (cleaned up). Here, all factors support certification: (1) individual claims are small[11] and there is little incentive for individual class members to bring claims; (2) there is no other relevant litigation; (3) it makes sense to concentrate the litigation here, as all class members are in California; and (4) as addressed above, because common issues predominate, there are no management difficulties that would foreclose a class action. A class action is superior.

### VI.    The Rule 23(b)(2) injunction-class requirements are met.

"Rule 23(b)(2) applies … when a single injunction … would provide relief to each member of the class." *B.K. v. Snyder*, 922 F.3d 957, 971 (9th Cir. 2019) (internal quotes omitted). Courts do not "examine the viability or bases of class members' claims"—they only look to "whether class members seek uniform relief from a practice applicable to all of them." *Bush v. Rust-Oleum Corp*., 2024 U.S. Dist. LEXIS 20131, at *16-18 (N.D. Cal. Feb. 5, 2024) (quotes omitted). It does not matter if "some class members may have suffered no injury or different injuries." *Id.* (quotes omitted). There

---

[11] For example, for Ms. Vizcarra's purchases, the average item charge is under ▮. Jacobson Decl. ¶10 (summarizing MICHAELS0000306).

is no predominance and no cohesiveness requirement. *Id.* And "questions of manageability and judicial economy are irrelevant." *Id.* (internal quotes omitted).

Here, Plaintiff seeks to redress a practice applicable to the entire class: the deceptive advertising of coupon discounts. And the injunction provides uniform relief: Michaels cannot offer coupon discounts that have misleading expiration dates or that mislead consumers about the discount off the true regular price. Rule 23(b)(2)'s requirements are met.

*    *    *

The class and subclasses meet all requirements for certification. The Court should certify a Rule 23(b)(3) damages class and (b)(2) injunction class. A proposed order is attached.

Dated: November 15, 2024

Respectfully submitted,

By: /s/ *Jonas Jacobson*
Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com

DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*